IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
Chicago Division

| | | |
|---|---|---|
| BRIGHTER SKY PRODUCTIONS, LLC, and | ) | |
| DAN TRAMON, and | ) | |
| DIANA BELKOWSKI, and | ) | |
| CARL ANTHONY TRAMON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 18-6723 |
| | ) | |
| MARRIOTT INTERNATIONAL, INC., and | ) | |
| BRE DIAMOND HOTEL HOLDINGS, LLC | ) | |
| as the surviving company of a merger with | ) | |
| STRATEGIC HOTELS & RESORTS, INC. | ) | |
| d/b/a MARRIOTT THEATRE, and | ) | **DEMAND FOR JURY TRIAL** |
| BRE DIAMOND HOTEL HOLDINGS, LLC, and | ) | |
| BRE DIAMOND HOTEL, LLC | ) | |
| a wholly owned subsidiary, and | ) | |
| DTRS LINCOLNSHIRE, LLC, and | ) | |
| RFMBG, LLC; and | ) | |
| LA-RFMBG LINCOLNSHIRE, LLC | ) | |
| d/b/a Marriott Theatre, and | ) | |
| MARRIOTT HOTEL SERVICES, INC., and | ) | |
| STRATEGIC HOTELS & RESORTS, LLC, and | ) | |
| MICHAEL MAHLER, and | ) | |
| AARON THIELEN, and | ) | |
| TERRY JAMES, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Brighter Sky Productions, LLC ("Plaintiff Brighter Sky"), Plaintiff Dan Tramon ("Plaintiff Dan Tramon"), Plaintiff Diana Belkowski ("Plaintiff Belkowski") and Plaintiff Carl Anthony Tramon ("Plaintiff Carl Tramon") (collectively "Plaintiffs"), by and through their undersigned attorneys, based upon actual knowledge with respect to their own acts and upon knowledge, information and belief with respect to all other matters, allege as follows:

## NATURE OF THE CASE

1.     This is a civil case that arises to remedy the unlawful actions taken by Defendants, in part with the assistance of their co-conspirator, Universal Pictures, a division of Universal City Studios, LLC ("Universal"), as they relate to Plaintiffs' musical *Rocket Boys* (the "Rocket Boys Musical") which is based on the #1 New York Times bestselling book *Rocket Boys: A Memoir* (the "Rocket Boys Book") written by world-renowned author Homer Hickam, Jr. ("Hickam").

2.     Over a decade before Hickam and Plaintiffs (together, the "Rocket Boy Team") would start collaborating to turn the Rocket Boys Book into a musical, Universal purchased the rights to the Rocket Boys Book in 1996 and adapted it into the beloved movie *October Sky* wherein Hickam was played by critically acclaimed actor Jake Gyllenhaal.

3.     The wheels were set in motion for the creation of the Rocket Boys Musical in 2007, but those wheels fell victim to the machinations of Defendants who conspired with Universal, and each other, to produce a competing musical (the "October Sky Musical") that ran at the Marriott Theater in Lincolnshire, Illinois (the "Marriott Theater") from August 9, 2015 to October 18, 2015.

4.     A combination of, *inter alia*, Defendants' infringement of Plaintiffs' intellectual property rights as well as illegal, tortious actions taken by Defendants deprived Plaintiffs of what rightfully belonged to them without their knowledge, authorization or consent.  This has has led to great economic injury to the Plaintiffs and unjust enrichment to Defendants that ultimately diminished the value of Plaintiffs' intellectual property.  Specifically, the Defendants (a) used and reproduced without Plaintiffs' knowledge, authorization or consent, Plaintiffs' intellectual property assets including, but not limited to, Plaintiffs' copyrights and trademarks as described herein; and (b) Defendants also engaged in tortious actions that led to Plaintiffs' losing revenue

they were entitled to and expecting after ten years of tireless, hard work and, instead, Defendants were unjustly enriched.

5. Defendants' legal violations include, inter alia, the following causes of actions: (a) Federal Copyright Infringement Under the Copyright Act (17 U.S.C. §§ 501(a) and 106)) asserted by Plaintiffs Against All Defendants; (b) Contributory Copyright Infringement asserted by Plaintiffs against all Defendants; (c) Federal Infringement of an Unregistered Trademark, False Designation of Origin, False or Misleading Description of Fact, and False or Misleading Representation of Fact Under Section 43(a)(1)(A) of the Lanham Act 15 U.S.C. § 1125(a)(1) asserted by Plaintiffs Against all Defendants; (d) Federal Unfair Competition of Trademarks Under Section 43(a) of the Lanham Act 15 U.S.C. § 1125(a) asserted by Plaintiffs Against all Defendants; (e) common law trademark infringement and unfair competition asserted by Plaintiffs Against All Defendants; (f) unfair competition under the Illinois Uniform Deceptive Practices Act, 815 Ill. Comp. Stat. Ann. 510/2 asserted by Plaintiffs Against All Defendants; (g) dilution of an unregistered trademark under the Federal Trademark Dilution Act (15 U.S.C. § 1125(c)) asserted by Plaintiffs against all Defendants; (h) intentional/tortious interference with prospective business or economic advantage by Plaintiffs against all Defendants; (i) unjust enrichment by Plaintiffs against all Defendants; and (j) civil conspiracy by Plaintiffs against all Defendants.

6. Plaintiffs set forth in this Complaint the facts, circumstances and course of dealings between Plaintiffs, Defendants, Hickam, the Rocket Boy Team and Universal as this provides the necessary facts and background to prove certain elements of the counts pled herein and to demonstrate how and why this case came to be before this Honorable Court after ten years of legal wrangling and multiple lawsuits.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331, because this suit asserts causes of action under 15 USC §1125, 17 U.S.C. §501, and 17 U.S.C. §§ 101.

8.     This Court has subject matter jurisdiction under 28 U.S.C. §1338(a)-(b).

9.     Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the claims in this Complaint that arise under the common law and statutes of the State of Illinois because the claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

10.     In the alternative, pursuant to 28 U.S.C. § 1332(a)(1), this Court has diversity jurisdiction over the claims in this Complaint because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and the parties are citizens of different states.

11.     Defendants are each subject to this Court's personal jurisdiction because (a) the Defendant corporations and limited liability companies either (i) maintain a principal place of business in the State of Illinois, (ii) are organized to do business in the State of Illinois, (iii) operate and transact business in the State of Illinois, (iv) can be found in the State of Illinois, (v) acted with, assisted, conspired, engaged, authorized and/or controlled the other Defendant corporations and limited liability companies conducting business in the State of Illinois; (vi) acted with, assisted, conspired, engaged, authorized and/or controlled the actions that occurred in the State of Illinois that give rise to the causes of action pled in this Complaint; (vii) committed the acts in furtherance of their business in the State of Illinois; and/or (viii) conduct business in the State of Illinois that generates a substantial amount of revenue; and (b) the individual Defendants either (i) reside in the State of Illinois; (ii) transact or conduct business in the State of Illinois;

4

(iii) can be found in the State of Illinois; (iv) acted with, assisted, conspired, engaged, authorized and/or controlled other Defendants conducting business in the State of Illinois; (v) acted with, assisted, conspired, engaged, authorized and/or controlled the actions that occurred in the State of Illinois that give rise to the causes of action pled in this Complaint; and/or (vi) committed the acts in furtherance of their business in the State of Illinois; and (c) Plaintiffs have suffered injury in the State of Illinois as a result of Defendants' unlawful acts; and (d) all development, writing, casting, rehearsing and production activities relating to the October Sky Musical took place in the State of Illinois.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)-(d) and § 1400(a) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district; a substantial part of property that is the subject of the action is situated in this district; Defendants reside in and are subject to personal jurisdiction in this district; Defendants are doing and have done business within this district; and/or this Complaint alleges claims against Defendants or their agents who either reside in the district or can be found in the district;

**THE PARTIES**

13.     Plaintiff Brighter Sky is a limited liability company organized under the laws of the State of New Jersey with a principal place of business located at 301 45th Street, #14A, New York, New York, 10001.  Plaintiff Brighter Sky is comprised of four members, three of which are the individual Plaintiffs in this action.

14.     Plaintiff Dan Tramon is an individual who resides at 815 Ramapo Valley Road, Oakland, New Jersey 07436.

15.     Plaintiff Belkowski is an individual who resides at 13 H Brookside Heights, Wanaque, New Jersey 07465.

16.     Plaintiff Carl Tramon is an individual who resides at 301 West 45th Street, #14A, New York, New York 10036.

17.     Defendant Marriott International, Inc. is a corporation organized under the laws of Delaware with a principal place of business located at 10400 Fernwood Road, Bethesda, MD 20817.

18.     Defendant Strategic Hotels & Resorts, LLC is a limited liability company organized under the laws of Delaware, also registered in Illinois, with a principal place of business located at 150 N Riverside Plaza, Suite 4100, Chicago, IL 60606.  From the time the development of the Rocket Boys Musical started in 2013 through the end of the production in 2015, the Marriott Lincolnshire Resort was owned and operated by Defendant Strategic Hotels & Resorts, Inc.  The Marriott Theater is a theater that is attached to, and a part of, the Lincolnshire Marriott Resort.

19.     Defendant BRE Diamond Hotel Holdings, LLC is a limited liability company organized under the laws of Delaware with a principal place of business located at 200 West Madison Street, Chicago, IL 60606 and Plaintiff believes, but is not certain, is the surviving company of a merger with Defendant Strategic Hotels & Resorts, Inc. d/b/a Marriott Theater which was incorporated in the State of Maryland.

20.     Defendant BRE Diamond Hotel, LLC is believed to be a wholly owned subsidiary of BRE Diamond Hotel Holdings, LLC.  At the time of the filing of this complaint, Plaintiff is uncertain as to who owns this Defendant, where the limited liability company is organized or where its principal place of business is.

21.     Defendant DTRS Lincolnshire, LLC ("Defendant DTRS") is a limited liability company organized under the laws of Delaware with a principal place of business located at 200 West Madison Street, Suite 1700, Chicago, Illinois 60606 and owned, operated and/or controlled the Marriott Theater during the time the Rocket Boys Musical was developed.

22.     Defendant RFMBG, LLC is a limited liability company organized under the laws of Delaware, registered to do business in Illinois, with a principal place of business located at 1250 Feehanville Drive, Suite 200, Mt. Prospect, Illinois 60056.

23.     Defendant LA-RFMBG Lincolnshire, LLC d/b/a Marriott Theatre is a limited liability company organized under the laws of Delaware with a principal place of business located at 1471 E. Business Center Drive, #900, Mt. Prospect, IL 60056.  The Lincolnshire Marriott Resort was owned by Defendant RFMBG, LLC, but as of on or about January 2016, the Lincolnshire Marriott Resort has been owned by LA-RFMBG Lincolnshire, LLC

24.     Defendant Marriott Hotel Services, Inc. is a corporation organized under the laws of Delaware with a principal place of business located at 10400 Fernwood Road, Bethesda, MD 20817.  From the time the development of the Rocket Boys Musical started in 2013 through the end of the production in 2015, the Marriott Lincolnshire Resort was owned and operated by Defendant Strategic Hotels & Resorts, Inc. and managed by Marriot Hotel Services, Inc. which is a subsidiary of Marriott International, Inc.

25.     Plaintiff does not have enough information at the time of filing this Complaint to untangle the web of Marriott companies and ascertain which companies are potentially liable for the actions complained of in this Complaint.  As such, in an abundance of caution, Plaintiffs file suit against various Defendant corporations, including the parent company, and will amend the Complaint at a later date upon receiving further information from the various Marriott subsidiaries

and their involvement, direction, control and liability as it relates to the actions complained of herein.

26.     Defendant Michael Mahler ("Defendant Mahler") is an individual who resides in Oak Park, IL.  Defendant Mahler wrote and contributed to the music, lyrics, script, sequences and scenes for the October Sky Musical.

27.     Defendant Aaron Thielen ("Defendant Thielen") is an individual who resides at Lincolnshire, Illinois.  Defendant Thielen is the Artistic Director of Marriott Theater and wrote the stageplay[1] for the October Sky Musical and co-wrote music and lyrics with Defendant Mahler.

28.     Defendant Terry James ("Defendant James") is an individual who resides in Lincolnshire, Illinois.  Defendant James is the Executive Producer of the Marriott Theater and is responsible for all aspects of the Marriot Theater's operations.

29.     In 2015, the year Defendants' presented the October Sky Musical at the Marriott Theater, the Marriott Lincolnshire Resort was managed by Defendant Marriott Hotel Services, Inc., a subsidiary of Defendant Marriott International, Inc., pursuant to a management agreement dated December 31, 1983 between Defendant DTRS Lincolnshire, LLC, and the owner of the property, Defendant Marriott Hotel Services, Inc.

30.     Although the October Sky Musical ran at the Marriott Theater in 2015, Defendants started developing the production in 2012 when they commenced discussions with Universal that culminated in an agreement between Defendants and Universal.  Defendants did not find this out until early 2018 and were shocked to find this out as the Rocket Boys Team had exclusive rights to the live stage presentation at that time.

---

[1] The word "stageplay" is a term of art in theater and is sometimes called "the book."  It refers to the script of a live stage performance and includes stage directions and dialogue.

31.     Due to the fact that there are so many corporate entities and individuals involved in the development, production and creation of the October Sky Musical, Plaintiffs cannot ascertain exactly which individuals and corporate entities are responsible for the illegal conduct that is specified in this Complaint, although various Defendants acted in concert and conspired with each other and Universal with regard to certain causes of action pled herein. Further, all of the details regarding the ownership, licensing and management structure relating to the Marriott Theater is not known to Plaintiffs. For the reasons stated in this paragraph, throughout the Complaint, unless otherwise specifically delineated, "Defendants" refers to all Defendants named herein and all Counts alleged in this complaint are alleged against all Defendants.

## BACKGROUND ON THE PLAINTIFFS

32.     Plaintiff Dan Tramon is a Julliard Prep and Columbia University graduate who has been involved in New York musical theater for most of his life. He has performed piano recitals in Lincoln Center and roles at the Met. He also studied at the Institute of Audio Research which led him to Broadway. He has been the Sound Engineer for some of the most successful Broadway productions including Kinky Boots, Sister Act, Catch Me If You Can, Bonnie & Clyde, Billy Joel's Movin' Out, Dolly Parton's 9 To 5 and Phil Collins/Disney's Tarzan. He has been Associate Sound Designer for multiple Broadway productions and served as Music Programmer for Paul Simon's Capeman, Cats, and Beauty and the Beast. He has orchestrated and performed digital music, composed pre-show music and various scores. Mr. Tramon has earned the honor of two ASCAP/Disney Musical Theater Workshop Awards, one of which is for the musical Rocket Boys that is the subject of this litigation.

33.     Plaintiff Carl Tramon is an experienced stage, television and film actor who is a graduate of the Royal Academy of Dramatic Art in London, England. He has performed on

9

Broadway, in national tours, alongside legendary actors like Angela Lansbury and director Stephen Schwartz, in such hit television shows as Saturday Night Live, One Life to Live, Saved by the Bell, Growing Pains, in over 50 national commercials and in several feature films. He has received many awards including the coveted Best Actor award nomination by the Broadway League. He was also the lead member of the pop group UNETI who has toured internationally, had videos air globally on MTV, and was chosen to be the soundtrack for The New York Yankees in their television and radio promotions for New York City. Plaintiff Carl Tramon has also directed countless stage productions and co-wrote many stageplays including the stageplay for the Rocket Boys Musical which is the subject of this litigation.

34.    Plaintiff Diana Belkowski is a graduate of Julliard and the BMI Lehman–Engel Musical Theatre Workshop and a recipient of two Billboard Music Awards for work in musical theatre and contemporary Christian music. She has traveled nationwide as a member of the Presidential Arts Committee and has written material for both presidential and gubernatorial campaigns. A long-time Director of Sacred Music, Plaintiff Belkowski has written extensively for choirs, won numerous awards as a classical pianist, written a 50-song educational series for Random House and written countless television theme songs. She is a two-time winner of the ASCAP/Disney Musical Theatre Award, one of which was for the Rocket Boys Musical that is the subject of this litigation.

35.    Plaintiff Brighter Sky is a New Jersey limited liability company that was created to create, produce, develop, exploit, promote and present the Rocket Boys Musical in conjunction with the The Rocket Boys Team.

10

## BACKROUND ON HOMER HICKAM AND UNIVERSAL

36.     After graduating from Virginia Tech in 1964 with a BS degree in Industrial Engineering, serving in Vietnam where he won the Army Commendation and Bronze Star medal, working as an engineer for the U.S. Army Missile Command, receiving a Distinguished Service Award for heroism shown during a rescue effort, carrying the Olympic Torch on its way to the Olympic Games and working as an aerospace engineer for NASA, Hickam achieved his greatest notoriety as a celebrated best-selling author of 18 novels and 27 memoirs. Hickam has received countless literary and humanitarian awards over the years for his cherished work as well as his tireless commitment to charitable causes and volunteer work.  Hickam is recognized world-wide as an inspirational figure and hero to be emulated by young people and adults alike and has been lauded more than once in the United States Congressional Record.

37.     Hickam wrote several books that became New York Times best sellers, but he is best known for the Rocket Boys Book which is the inspirational and uplifting story about his life growing up in the little town of Coalwood, West Virginia.  In 1996, Hickam sold his story and the rights to the Rocket Boys Book to Universal who turned it into the critically-acclaimed October Sky Movie.

38.     The Rocket Boys Book has won many awards, was bestowed with many honors and reached the New York Times # 1 position on their best-seller list and is still in hardcover, trade paper, and mass market paperback two decades after publication due to its continuing popularity. It is one of the most often chosen community and library reads in the United States. "Rocket Boys" was a Reader's Digest condensed book, was featured and partially condensed in a Life magazine article, was published in twelve International languages, became a best-seller in Japan, and is

studied to this day in secondary schools and colleges as an important book of 20th Century literature.

39.     The Rocket Boys Book has become a bona fide American classic as has the October Sky Movie which has won countless awards, is recognized by the public as one of the most inspirational movies ever made and often shown to students from elementary school through high school.

40.     Under the terms of Hickam's agreement with Universal, Hickam granted Universal rights to his life story spanning certain years.  Hickam's understanding of the agreement and Universal's understanding of that agreement were quite different as Hickam would eventually come to realize after he meets Plaintiffs and decides he would like to work with them.

**COURSE OF DEALINGS REGARDING THE ROCKET BOYS MUSICAL**

41.     In or about 2006, the three individual Plaintiffs approached Hickam and told him that they wanted to develop the Rocket Boys Book into a musical.

42.     The three individual Plaintiffs made a dramatic presentation to Hickam that included music that Plaintiff Dan Tramon and Plaintiff Diana Belkowski wrote that could be used for the musical.

43.     In or about 2007, Hickam notified Universal about his desire and intentions to work with Plaintiffs to develop a musical.  Universal responded to Hickam and advised him that they owned the rights to the musical pursuant to his contract with Universal.  Hickam then contacted Ron Meyer, then-President of Universal, and requested that Universal grant him the rights to produce the musical.

44.     Universal and Hickam thereafter entered into a document that amended Hickam's initial contract with Universal (the "Amended Universal Agreement").

45.     Pursuant to the Amended Universal Agreement, Universal granted Hickam the exclusive stage rights to produce a live performance of the Rocket Boys Book for five years.  The Amended Universal Agreement further provided that upon the expiration of Hickam's five-year exclusivity to the live stage rights, Hickam's rights would become non-exclusive.

46.     With Hickam's rights to the musical secured, the Rocket Boys Team developed the Rocket Boys Musical and, in or about April 2008, the Rocket Boys Musical was chosen as one of three top winners in The Academy for New Musical Theatre's "Search for New Musicals" competition and the project is awarded a full staff reading and workshop that is held in Los Angeles in late April of 2008.

47.     On May 24 and May 25, 2008, the first staged readings of the Rocket Boys Musical were held at the Merrimack Theater in Huntsville, Alabama.  Universal was notified and invited.

48.     In or about 2009, the Rocket Boys Team engaged in discussions and/or turned down multiple offers to produce, present and/or develop the Rocket Boys Musical including but not limited to inquiries, offers and negotiations from the following:   Clovis North Educational Center in Fresno, CA, Arena Stage in Washington, D.C., producer Mark Salyer, the Chair of Musical Theater at the University of Michigan Bret Wagner, and the Virginia Tech Performing Arts Center.

49.     In or about 2009, the Rocket Boys Team entered into negotiations with the Old Globe Theatre in San Diego for a 2012 run of the Rocket Boys Musical.  Hickam advised Universal of the Rocket Boys Team's desire to open at the Old Globe Theatre in 2012 and Universal responded positively and approved of the production.

50.     On or about June 4, 2010, Chuck Gordon, producer of the October Sky Movie, sent an e-mail to Plaintiff Carl Tramon and Hickam advising them that Aaron Glick and Patrick Catullo

would be attending the upcoming New York industry read on behalf of Universal, as would Marc Platt who is an independent producer that has collaborated with Universal.

51.     On or about June 7, 2010, The Rocket Boys Team presented a New York industry read of the Rocket Boys Musical which featured an all-Broadway cast.  The reading receives positive reviews and many publications write stories about the reading including but not limited to Playbill, Variety and BroadwayWorld.

52.     On or about January 10, 2011, Hickam entered into a written agreement with Plaintiffs title the Underlying Rights and Author Collaboration Agreement (the "Rights and Collaboration Agreement").

53.     Pursuant to the Rights and Collaboration Agreement, Plaintiff Brighter Sky contracted for the services of Plaintiff Dan Tramon and Plaintiff Diana Belkowski as composers/lyricists and Plaintiff Carl Tramon and Hickam as bookwriters.

54.     Pursuant to the Rights and Collaboration Agreement, Plaintiffs and Hickam were owners of certain underlying rights to the Rocket Boys musical including but not limited to copyright and trademark rights.

55.     The Rights and Collaboration Agreement references the Amended Universal Agreement, which is attached as an exhibit to the Rights and Collaboration Agreement, and gives Hickam certain stage rights to his novel and the ability to quitclaim his stage rights to Plaintiff Brighter Sky.

56.     Pursuant to the Rights and Collaboration Agreement, Plaintiff Brighter Sky acquired, *inter alia*, the following rights: (a) exclusive rights from Hickam to write or cause to be written one or more live dramatic musical stageplays; (b) creative control with regard to the musical; (c) the right to produce and exploit the musical in all languages throughout the world in

all kinds of venues; (d) the right to enter into agreements with other producers and grant them their rights; (d) the right to use the title of the book, names in the book and Hickam's name in the title of the play; (e) the right to create and exploit merchandise, commercial uses, albums and publishing of the musical; (f) the right to copyright the musical in the name of the authors; (g)  the right to advertise, promote and publicize the musical in all media; and (g) the right to grant any of the aforementioned rights to third parties.

57.     Pursuant to the Rights and Collaboration Agreement, Hickam represented and warranted that, *inter alia*, (a) he had the full rights to grant the rights contemplated under the agreement except for certain stage rights that may be owned and controlled by Universal; (b) the copyrights were valid and that Hickam will maintain all copyrights for the maximum time possible; and (c) he was assigning all rights subject to the Universal agreement attached.

58.     Pursuant to the Rights and Collaboration Agreement, after twenty-one paid public performances including eight preview performance, Plaintiff Brighter Sky would have the sole and exclusive right to sell, license or dispose of the play in all media and the three individual Plaintiffs herein shall own all right, title and interest in the musical and shall cause the copyright of the musical in the name of the authors.  The Rocket Boys Musical would eventually have more than twenty-one paid public performances.

59.     Prior to the twenty-one paid public performances, the three individual Plaintiffs each owned and controlled their respective contributions to the Rocket Boys Musical such that Plaintiff Carl Tramon and Hickam owned the copyright to the stageplay and Plaintiff Dan Tramon and Plaintiff Diana Belkowski had joint ownership of the copyright to the music and compositions.

60.     On or about March 30, 2011, Hickam sent Universal a letter to inform them of an offer for the Rocket Boys Musical to run at the 1,260-seat Theatre West Virginia, a professional

amphitheater nestled in the New River Gorge state park. This production was approved by Universal who also declined their percentage of revenues received as provided for in the Amended Universal Agreement.

61.     In or about 2011, the Rocket Boys Musical started its sold-out world premiere run at the Theatre West Virginia to overwhelmingly positive reviews.

62.     On or about September 8, 2011, Hickam wrote to Universal to request its approval with regard to production and distribution of a soundtrack to the Rocket Boys Musical.

63.     On October 5, 2011, Hickam e-mailed Plaintiffs and asked for sampler CD's of the Rocket Boys Musical to give to Universal legal, Ron Meyer of Universal and Chuck Gordon. On or about October 11, 2011, Hickam delivered these updated CD's and the Rocket Boys stageplay personally to those individuals.

64.     In or about Summer of 2012, the Rocket Boys Musical enjoyed a second successful run at Theatre West Virginia that was again met with overwhelmingly positive reviews.

65.     In or about 2012, Hickam contacted Universal to inform them of the Rocket Boys Team's intent to create a cast album CD for sale and distribution. Universal supported the idea and declined to accept any proceeds from the sale of the CD. The CD was subsequently produced and sold by Plaintiffs and continues to be sold at future productions and online through the Rocket Boys Musical's website.

66.     On or about October 11, 2012, Hickam's exclusive rights to create, produce and present the Rocket Boys Musical under the Amended Universal Agreement expired. At that point, both Hickam and Universal held non-exclusive rights to the musical.

67.     In or about April of 2013, the Vice President of Live Theatricals at Universal, Chris Herzberger ("Herzberger") met with various Defendants about creating a musical based on the

movie October Sky. Universal failed to disclose this to Hickam as required by the Amended Universal Agreement. Plaintiffs did not find out about this until early 2018.

68.     The first time The Rocket Boys Team heard about the October Sky Musical is when a fan e-mailed Hickam about it on or about May 27, 2013.

69.     On or about May 29, 2013, Hickam received an email from the Vice President/Legal Affairs at Universal, Keith Blau ("Blau"), wherein he advised Hickam that Universal was interested in licensing non-exclusive stage rights to what would become the October Sky Musical to the Marriott Theater.

70.     On or about May 30, 2013, Herzberger advised Hickam by telephone that Universal had already agreed that the Marriott Theater could produce the October Sky Musical. Hickam expressed his fears and misgivings about the October Sky Musical, but Herzberger reassured Hickam and explained that the October Sky Musical was not yet written and that Universal might end up doing nothing with the project anyway. Herzberger further explained that Marriott was paying Universal and not the other way around and that Universal was giving Marriott no financial support for the production. In the same conversation, Herzberger told Hickam that Universal had no intention of interfering with the Rocket Boys Musical, that the October Sky Musical had no plans to compete with the Rocket Boys Musical and that the Rocket Boys Musical could continue without any issues. Herzberger explained his position that the Rocket Boys Musical was helping to promote the movie October Sky and that "Universal would never do anything to stop that."

71.     After the May 30, 2013 phone call, Hickam drafted a letter to his attorney memorializing the content of his discussion with Herzberger and also sent Herzberger an e-mail dated May 30, 2013 referencing the fact that he would send Herzberger the stageplay for the

Rocket Boys Musical.  Herzberger would later confirm receipt of the stageplay in an e-mail to Hickam dated June 25, 2013.

72.     After the May 30, 2013 phone call between Herzberger and Hickam, the two men had several more conversations and email exchanges wherein Herzberger assured Hickam that Universal was only granting Marriott non-exclusive rights to the October Sky Musical and that the Rocket Boy Team could continue with their production of the Rocket Boys Musical without Universal's interference.  Hickam's wife was a witness to one such conversation.

73.     After Plaintiffs found out about the October Sky Musical, Plaintiff Carl Tramon called Herzberger, who reiterated what he previously told Hickam.  Herzberger told Plaintiff Carl Tramon that the Rocket Boys Team and the Rocket Boys Musical could continue down its path and that Universal would never stand in its way.  In fact, Herzberger stated, "I hope both musicals are playing on Broadway at the same time."

74.     In or about Summer of 2013, the Rocket Boys Musical had a third successful summer run at Theatre West Virginia, again to overwhelmingly positive reviews.

75.     In or about 2013, the Rocket Boys Musical was presented at Fairmont State University in West Virginia.

76.     As the Rocket Boys Team continued to develop the Rocket Boys Musical, industry readings were held and interest built toward an eventual Broadway run and national tour.

77.     In or about 2013, Plaintiff Carl Tramon received an inquiry from the Legacy Theatre in Atlanta and a contract is executed on or about February 27, 2014 to produce the Rocket Boys Musical for a one month run at the Legacy Theatre in 2014.

78.     On or about June 11, 2014, Plaintiff Carl Tramon communicated with the new Managing Director of the Old Globe Theatre who expressed that was happy to hear from Plaintiff

and remembers that the Rocket Boys Musical production was "on our books." The Old Globe Theatre expressed continued interest in the Rocket Boys Musical but two weeks later they suspiciously advised Plaintiff Carl Tramon that they were not interested with moving forward.

79.     The Rocket Boys Team found out that a production date had been announced for the October Sky Musical despite Hickam not being notified by Universal of same.

80.     In an e-mail chain dated July 24, 2014, Blau advised Hickam that Universal has no objection to the Rocket Boys Musical's upcoming production at the Legacy Theatre, but that Hickam should advise Universal of any other intended productions in the future ahead of time.

81.     On August 1, 2014, Herzberger advised Hickam by e-mail that the October Sky Musical was going forward in the Fall of 2015. Hickam responded by asking to see the stageplay of the October Sky Musical as he was concerned about various portrayals and inaccuracies. This request was either ignored or denied. Later that day Hickam responded to a fan online asking about the October Sky Musical by stating that he had concerns about various portrayals and factual inaccuracies in the October Sky Musical. Herzberger promptly objected to the online post and Hickam and Herzberger spoke on the phone. Herzberger again reassured Hickam that the October Sky Musical would not affect the Rocket Boys Musical. After the phone call, Hickam removed the post online and sent an e-mail to Herzberger stating that he would talk to the producers of the October Sky Musical. Hickam also addressed some of his creative concerns and offered some suggestions in that same e-mail.

82.     On August 15, 2014, Hertzberger e-mailed Hickam asking him to contact the producers of Defendants' production to help with the October Sky Musical. Hickam responded that he would talk to them.

83.     On or about September 15, 2014, after Hickam again expressed concerns to Universal about various portrayals in the October Sky Musical, Herzberger requested that Hickam speak with Defendant Thielen and Defendant Mahler regarding the October Sky Musical.

84.     Based on the assurances that Universal would not interfere with and would permit the Rocket Boys Musical to continue and in an effort to address his concerns regarding portrayals in the October Sky Musical, Hickam agreed to speak to Defendant Thielen and Defendant Mahler.

85.     On or about October 17, 2014, Hickam spoke to Defendant Thielen and Defendant Mahler and expressed concerns about portrayals and issues he had with the October Sky Musical. Defendant Thielen and Defendant Mahler assured Hickam that his concerns would be addressed.

86.     In or about early 2015, Hickam and Herzberger exchanged mostly positive e-mails. Herzberger congratulated Hickam on the success of his latest novel, a novel that Universal would later attempt to claim the rights to.  Hertzberger and Hickam also coordinated a trip for Herzberger to attend a production of the Rocket Boys Musical in Atlanta.

87.     In or about March 2015, Universal contacted Plaintiffs' publicist and demanded that the Universal logo be removed from all the Rocket Boys Musical materials despite Herzberger previously approving of same.

88.     On March 27, 2015, Hickam e-mailed Herzberger about Universal's demand that the Rocket Boys Team stop using the Universal logo and explained that the Amended Universal Agreement requires that Universal be given credit.

89.     On March 28, 2015, Herzberger responded and advised Hickam that there is no need to give credit to Universal and that the Rocket Boys Team was free and clear of any billing obligations to Universal.

90.     In reliance on Herzberger's repeated assurances to the Rocket Boys Team that Universal would not interfere with the Rocket Boys Musical and continue to approve of its productions, Plaintiffs continued to invest their own funds in the Rocket Boys Musical bringing the total to over $500,000.00.  Moreover, Plaintiffs solicited others to invest in the Rocket Boys Musical, and in total, received verbal pledges in excess of $9 Million Dollars with the plan to take the Rocket Boys Musical to an off-Broadway theater and then either to a larger theater on Broadway or a national tour.

91.     The Rocket Boys Musical ran from April 17, 2015 through May 10, 2015 at the Legacy Theatre in Atlanta.

92.     Members of The Suzi Awards committee attended a performance at the Legacy Theatre on opening night and they recommended the Rocket Boys Musical for an award the following day, the fastest any production has ever been recommended for this honor.

93.     On May 9, 2015, Herzberger attended a performance of the Rocket Boys Musical at the Legacy Theatre and praised the production to Plaintiff Carl Tramon and Hickam in person and, subsequently, to Hickam in writing the day after the show.  Herzberger also, once again, reiterated to Plaintiff Carl Tramon after the May 9, 2015 show that Universal would never stand in the way of the Rocket Boys Musical.

94.     The production at the Legacy Theatre received great publicity.  A press release was issued about the Rocket Boys Musical's run at the Legacy Theatre and many media articles about the Rocket Boys Musical followed.

95.     On or about May 18, 2015, an investor hosted a private showing of the Rocket Boys Musical In New York City for a small group of potential investors.  This was followed by a larger presentation at The National Arts Club in New York City.  These presentations were so successful

that The Rocket Boys Team immediately obtained many key investors, including Bill Nye (famously known as the star of the children's show *Bill Nye the Science Guy*).

96.     After the pledges of various investors, The Rocket Boys Team retained Aaron Grant Theatricals as their General Manager, who then quickly started talking to New York Theatres about opening in 2016.  As a result, Aaron Grant Theatricals negotiated a deal between Plaintiffs and New World Stages, a renowned performing arts complex in New York's Theater District.  Plaintiffs and New World Stages agreed to terms, contracts were drafted and Plaintiffs prepared to announce their opening at New World Stages in April of 2016.

97.     In a letter dated June 16, 2015, Blau advised Hickam's attorney that Universal would be unable to consider approval of further productions of the Rocket Boys Musical at least until after Defendants' October Sky Musical had completed its run at the Marriott Theater in October 2015.

98.     On June 18, 2015, Hickam sent Universal a letter advising them that The Rocket Boys Team had investors set up for the Rocket Boys Musical off-Broadway run and any actions on the part of Universal to impede this would create a significant economic loss.  On the same day, Hickam spoke to Herzberger and expressed his frustration with the fraudulent misrepresentations made by Herzberger whereby he promised that Universal would not interfere in the Rocket Boys Musical or halt its production which, in turn, induced Plaintiff and Hickam to invest more of their own money and also secure additional investors.  In response, Herzberger advised Hickam that he would do his best to get Hickam another amendment to the Amended Universal Agreement to ensure the continued production and performance of the Rocket Boys Musical.

99.     Herzberger and Hickam continued communicating by e-mail over the next few days and on about June 26, 2015, Herzberger and Hickam had a pleasant conversation and agreed that

the Rocket Boys Musical could continue with the condition that the Rocket Boys Musical could not run in the same city as the October Sky Musical. Herzberger again said he would send Hickam a new amended agreement to review.

100. After the reassurances from Herzberger, Hickam notified Universal that the Rocket Boys Team was holding another New York City presentation for producers and directors.

101. Herzberger and Hickam exchanged e-mails through July 2015 whereby Herzberger indicated that was is still working on getting Hickam a new amendment to the Amended Universal Agreement.

102. In or about July 2015, Blau sent Hickam a proposed second amendment to the Amended Universal Agreement (the "Second Amendment"). Before Hickam could read the Second Amendment, he met with Herzberger in Los Angeles and they have a pleasant meeting wherein the take away was, again, that the two musicals could co-exist so long as they did not play in the same town at the same time.

103. After the meeting with Herzberger, Hickam read the Second Amendment and found that the terms were completely unacceptable as he believed it placed the Rocket Boys Musical even more under the control of Universal.

104. On July 26, 2015, Hickam sent Herzberger an e-mail explaining his position regarding the Second Amendment and said that it would effectively end the Rocket Boys Musical.

105. On or about July 27, 2015, Hickam sent Herzberger an e-mail advising him that he learned that Herzberger was actually a Marriott Theatre alumnus who worked and acted there prior to being hired by Universal. Plaintiffs later found out that Herzberger also acted in a production of "Big" with Susan Moniz who is one of the actresses that was featured in the October Sky Musical. Hickam wrote to Herzberger about his failure to disclose that information to Hickam and other

executives at Universal, urged Herzberger to delay the October Sky Musical until an agreement could be reached regarding the Rocket Boys Musical, and threatened to reveal Herzberger's ties to other Universal executives and start a media campaign. Herzberger did not respond.

106.    On or about August 6, 2015, Hickam wrote another letter to Universal informing them of the Rocket Boys Team's intent to run off-Broadway in 2016 and reminded Universal that Universal never informed or consulted with Hickam before granting rights to Defendants.

107.    On August 10, 2015, Horowitz sent a letter to Hickam wherein he (a) warned Hickam about his complaints and efforts to damage the October Sky Musical; (b) defended Universal's actions; (c) told Hickam that his attacks must end; and (d) dared Hickam to sue Universal.

108.    Hickam responded to Horowitz with a conciliatory letter dated August 12, 2015 wherein he reasserted his rights in the Rocket Boys Musical and stated that he would not disparage the October Sky Musical so long as Defendants did not insinuate that Hickam supports or approves of their production.  Additionally, Hickam advised Horowitz that investors were lined up for the Rocket Boys Musical and that the Governor and two Senators were going to announce on the Senate floor that the Rocket Boys Musical was going to New York City.

109.    On or about August 13, 2015, Hickam advised Plaintiffs that he sent a letter to Horowitz and his attorney told him that Universal was appreciative of the letter.  He further advised Plaintiffs that Universal was moving toward allowing the Rocket Boys Musical to continue and further discussed the investors in the Rocket Boys Musical being on hold until Universal made its decision after the October Sky Musical finished its run at the Marriott Theater. Hickam indicated that negotiations with Universal were continuing.

24

110.    From on or about August 19, 2015 through October 18, 2015, the October Sky Musical ran at the Marriott Theatre in Lincolnshire, Illinois.

111.    On or about August 26, 2015, Hickam e-mailed Plaintiffs advising them that Universal should let them know if they approved of the Rocket Boys Musical by September 6, 2015. Hickam further advised Plaintiffs that he sent a revision of the Second Amendment to Universal and he was waiting for a response. At that time the Rocket Boys Team had investors and a Tony award winning actor lined up for their off-Broadway run.

112.    On September 3, 2015, Blau wrote to Hickam and advised him that Universal did not approve of the Rocket Boys production in New York City.

113.    On or about September 24, 2015, after speaking to Herzberger and Bleu, Plaintiffs' attorney advised Plaintiff Carl Tramon that Universal was very upset with Hickam and that they refused to consider his request to continue the production of the Rocket Boys Musical until after the October Sky Musical completed its run at the Marriot Theater, and that they should keep investors on hold until the October Sky production was done at the Marriott Theater. Hickam followed this with an e-mail to Plaintiffs advising them that they must now consider the Rocket Boys Musical to be in hiatus.

114.    On or about March 1, 2016, Blau sent a letter to Hickam's attorney that included a proposed amendment to the Amended Universal Agreement (the "Third Amendment"). In this correspondence, Universal claimed that despite Hickam's belief that Universal only had rights to certain years of Hickam's life as covered in the Rocket Boys Book, the October Sky Movie and the October Sky Musical, Hickam's contracts with Universal actually conveyed to Universal the rights to the story of Hickam's entire life span and Universal offered these alleged rights back to Hickam in exchange for termination of Hickam's s live stage rights to the Rocket Boys Musical,

an agreement that Hickam would not disparage Universal, its employees, the October Sky Musical or the October Sky Movie, and a release of all claims Hickam may have against Universal.

115.    After the March 1, 2016 letter, Hickam was upset as Universal was now asserting claims to many of his novels and leveraging this to get him to sign away all of his stage rights and to effectively kill the Rocket Boys Musical forever.  Universal increased their machinations to force Hickam's hand when Horowitz called Hickam's attorney several times and had long conversations wherein he expressed his anger and denounced Hickam for not signing the Third Amendment.  Despite pressure from Universal and his attorney, Hickam ultimately refused to sign the Third Amendment.

116.    On or about March 25, 2016, Plaintiffs learned that the October Sky Musical would be running at the Old Globe Theatre in San Diego in the fall of 2016.

117.    The Old Globe Theater had previously wanted to produce the Rocket Boys Musical and thus received copies of the Rocket Boys stageplay and musical score.

118.    On or about May 13, 2016, Hickam filed a lawsuit in the Superior Court for the State of California in the County of Los Angeles, Central District, against Universal, Horowitz, Herzberger, Bleu, and Charles Gordon.  The case eventually settled, but the Defendants made it a condition to the settlement that each of the Plaintiffs in this case had to sign a release whereby each of the Plaintiffs herein agreed to release Universal, Horowitz, Herzberger, Bleu and Gordon from any and all claims they have against them, now or in the future.

119.    Plaintiffs were coerced and strong-armed into signing it because Universal made it clear that they would only grant Hickam the rights to all his novels, with the exception of Rocket Boys, if each Plaintiff herein released the Defendants in Hickam's case.

120.    As part of Hickam's Settlement Agreement with Universal, Hickam retained the live stage rights to the Rocket Boys Musical within the State of West Virginia and is continuing to grant those rights to Plaintiffs.

121.    The October Sky musical ran from September 22, 2016 through October 23, 2016 at the Old Globe Theatre in San Diego.

122.    On June 13, 2017, Plaintiffs filed a lawsuit against some of the Defendants named herein in the U.S. District Court for the District of West Virginia. That case was dismissed without prejudice because it was filed in the improper jurisdiction.

123.    From July 20, 2018 to July 22, 2018, the Rocket Boys Musical ran for a fourth time at Theater West Virginia.

124.    Based upon the improper acts of the Defendants, Plaintiff has commenced the instant lawsuit in the correct jurisdiction to seek redress for Defendants' wrongful, improper and illegal acts.

## PLAINTIFF'S INTELLECTUAL PROPERTY AND PROPRIETARY RIGHTS TO THE ROCKET BOYS MUSICAL

125.    Plaintiff Brighter Sky is the owner of all live stage rights to the Rocket Boys Musical.

126.    Plaintiff Dan Tramon composed music and wrote lyrics for the Rocket Boys Musical, both alone and with Plaintiff Belkowski, and owns the copyright to all compositions and lyrics he created alone or in conjunction with Plaintiff Diana Belkowski.

127.    Plaintiff Belkowski composed music and wrote lyrics for the Rocket Boys Musical, both alone and with Plaintiff Dan Tramon, and owns the copyright to all compositions and lyrics she created alone or in conjunction with Plaintiff Dan Tramon.

128.     Plaintiff Carl Tramon wrote the stageplay with Hickam and co-owns the copyright to the stageplay in conjunction with Hickam.  The stageplay for the Rocket Boys Musical was registered in the names of Plaintiff Carl Tramon and Hickam with the Writer's Guild of America, East on May 30, 2008 for ten years and was renewed on May 18, 2018 for another ten years.

129.     On January 6, 2015, a Certificate of Registration was issued by the U.S. Copyright Office for music titled "Rocket Boys -  Theme & Variation" for the Rocket Boys Musical evidencing Plaintiff Belkowski as the copyright claimant with authorship of the music and musical arrangements and a year of completion of 2014.

130.     On May 25, 2016, Plaintiff Carl Tramon filed a copyright application with the U.S. Copyright Office for the Rocket Boys Musical Cast CD Cast Album with a year of completion of 2008 and date of first publication in the United States of August 26, 2011.  The application indicates that each of the three individual Plaintiffs were copyright claimants.  Authorship was broken down as follows:  Plaintiff Dan Tramon created the music, lyrics, musical arrangement and artwork; Plaintiff Belkowski created the music, lyrics and artwork, Plaintiff Carl Tramon created the text and artwork; and Hickam created the text and artwork.  This application was accepted and registered by the U.S. Copyright Office on May 25, 2016.

131.     Plaintiffs' artwork and logo (the "Trademarks") were an integral part of Plaintiffs' branding and have continuously used those Trademarks in connection with the Rocket Boys Musical.  Plaintiffs have spent significant financial resources in connection with the Trademarks, brand development and marketing in an effort to build consumer trust in the Rocket Boys Musical as identified by their Trademarks.

132.   Plaintiffs are the sole and exclusive owners of the Trademarks which are distinctive, used in intrastate and interstate commerce, identify Plaintiffs as the source of goods provided, and were and are relied on by consumers (thereby acquiring a secondary meaning).

133.   Plaintiffs first used the Trademarks in interstate commerce on or about 2008.

134.   Plaintiffs' Trademarks are inherently distinctive.

135.   In the alternative to the preceding paragraph, Plaintiffs' Trademarks have become distinctive by acquiring a secondary meaning. Such secondary meaning has been acquired through (1) Plaintiffs' advertising efforts and expenditures made to market the business, (2) the success of the Rocket Boys Musical as is evidenced by the repeatedly sold out shows in different venues in different states in the country; (3) unsolicited media coverage of the Rocket Boys Musical, Plaintiffs and their use of the Trademarks, (4) attempts by Defendants' to plagiarize, use and copy Plaintiffs' Trademarks, and (5) the length and exclusivity of the Trademarks' use by Plaintiffs, who have been the sole and exclusive user of the Trademarks since 2008, apart from Defendants' unauthorized use.

136.   Plaintiffs' use of the Trademarks has been deliberate and continuous, not sporadic, casual, or transitory; Plaintiffs started using the Trademarks on or about May 8, 2008, and has used such Trademarks continuously through the present.

137.   Plaintiffs have asserted their sole and exclusive ownership and proprietary interest in the Trademarks by sending a cease and desist letter to Defendant Marriott.  Plaintiffs never authorized the use or reproduction of the Trademarks to any third party.

138.   Plaintiffs and producers authorized by Plaintiffs have invested significant resources in the Rocket Boys Musical and undertook significant efforts to advertise, market and promote the

Rocket Boys Musical for over ten (10) years, generating considerable press and public attention for Plaintiffs' creative and commercial efforts.

139.    Throughout all phases of the Rocket Boys Musical and through all productions, the Rocket Boys Musical received stellar reviews from critics and audiences throughout the country, played to sold out theatres and received numerous awards.

## DEFENDANTS' WRONGFUL ACTS, INJURY TO PLAINTIFFS AND UNJUST ENRICHMENT OF DEFENDANTS

140.    Defendants' infringed on Plaintiffs' copyrights and trademark rights when they unlawfully used, copied, reproduced and used Trademarks, or elements of Trademarks, that belonged to Plaintiffs in Defendants marketing and promotional materials for the October Sky Musical without Plaintiffs' knowledge, consent, permission or authorization.

141.    The graphic depictions used by Defendants are sufficiently similar to Plaintiffs' Trademarks to cause confusion in the marketplace, and are a continuing infringement and continued unauthorized use and unauthorized duplication, reproduction and copying of Plaintiffs' Trademarks.

142.    Defendants' marketing and promotional efforts resulted in the dissemination of marketing and promotional print, online and video materials that contained unauthorized use and copying of Plaintiff's Trademarks.

143.    Defendants infringed on Plaintiffs Dan Tramon and Diana Belkowski's copyrights when Defendants used parts of musical compositions that were created and owned by Plaintiffs Dan Tramon and Diana Belkowski without their knowledge, consent or authorization.

144.    Defendants infringed on Plaintiffs Dan Tramon and Diana Belkowski's copyrights when Defendants used song lyrics that were created and owned by Plaintiffs Dan Tramon and Diana Belkowski without their knowledge, consent or authorization.

145. Defendants infringed on Plaintiff Carl Tramon's copyrights when they used stageplay dialogue that was written and owned by Plaintiff Carl Tramon without his knowledge, consent or authorization.

146. Defendants infringed on Plaintiff Carl Tramon's copyrights when they used various elements of the stageplay, including but not limited to structure, sequencing, scenes, and stage directions, that were written and owned by Plaintiff Carl Tramon without his knowledge, consent or authorization.

147. Defendants illegally profited from the unauthorized use of Plaintiffs' copyrights and Trademarks.

148. Defendants caused economic damage to Plaintiffs as a result of Defendants' unauthorized use of Plaintiffs' copyrights and Trademarks.

149. Defendants, by and through Universal, had access to the stageplay, musical compositions and lyrics to the Rocket Boys Musical. Universal was given the aforementioned intellectual property on multiple occasions as specified in this Complaint.

150. Defendants also had access to Plaintiffs' intellectual property as a result of the fact that the Rocket Boys Musical was publicly performed a great number of times in multiple states. Multiple Universal representatives attended these performances and any Defendant or member of the general public could have paid to attend these performances. The performances could have been recorded and audio and video of the performances were sometimes featured online.

151. Various segments, patterns and motifs of the music and lyrics in the October Sky Musical were substantially similar to the motifs, music and lyrics in the Rocket Boys Musical.

152. Various elements of the stageplay for the October Sky Musical were substantially similar to the elements in the Rocket Boys Musical.

153. The proprietary intellectual property Defendants stole from Plaintiffs for the October Sky Musical only appears in the Rocket Boys Musical and are not contained in the Rocket Boys Book or the October Sky Movie.

154. Defendant's unauthorized exploitation of Plaintiffs' intellectual property is for the purpose of commercial gain and was done without Plaintiff's knowledge, consent or authorization.

155. The Rocket Boys Musical is a dramatic-musical work protected by copyright and Defendants have misappropriated the copyrighted and copyrightable performance rights of the Rocket Boys Musical.

156. Defendants' unauthorized use of the Rocket Boys Musical's proprietary intellectual property has confused and/or is likely to further confuse the general public and professionals engaged in theater and entertainment into believing there is an association or affiliation between Plaintiffs and Defendants and/or Plaintiffs' association, affiliation, authorization, sponsorship or endorsement of the October Sky Musical.

157. Defendants have misappropriated and used Plaintiffs' proprietary intellectual property without any permission, authorization, consent, sale, or license of Plaintiffs' ownership rights and have conducted themselves in a form and manner inconsistent with and detrimental to the Plaintiffs' ownership rights.

158. Defendants have neither sought nor obtained permission for any use of the content of the Rocket Boys Musical and have not paid Plaintiffs proper consideration or accounted financially to them prospectively or otherwise for the aforementioned uses.

159. Defendants interfered with Plaintiffs' exclusive rights to authorize, or decline to authorize, public performances of its work thereby causing financial, personal, and professional

harm to Plaintiffs while Defendants inaccurately take credit for Plaintiffs' intellectual property as belonging to Defendants while benefitting financially from the enhanced corporate goodwill.

160.    The Rocket Boys Musical and its contents are protected by copyright and trademark law and Plaintiffs are thereby afforded exclusive rights to any and all productions, staging, and uses under United States copyright and trademark laws, including, without limitation, the right to prepare and distribute derivative works -- ostensibly with paid consideration.

161.    Defendants conspired with Universal to authorize the Rocket Boys Team to develop and produce the Rocket Boy Musical so that Plaintiffs would incur the continued time and expense to write the Rocket Boys Musical's stageplay and music which Universal and Defendants intended to steal, and did in fact steal, so that it could be utilized in the October Sky Musical.

162.    Defendants illegal actions as specifically pled in this Complaint, including but not limited to the infringing content of the October Sky Musical and outright theft of Plaintiff's intellectual property, was a proximate cause of confusion in the marketplace and investors in the Rocket Boys Musical becoming unsure as to who truly owned the intellectual property rights thereby resulting in the investors withdrawing their financial support of the Rocket Boys Musical.

163.    Defendants' illegal actions as specifically pled in this Complaint, including but not limited to the infringing content of the October Sky Musical and outright theft of Plaintiffs' intellectual property was a proximate cause of confusion in the marketplace and investors in the Rocket Boys Musical becoming unsure as to who truly owned the intellectual property rights thereby resulting in the investors withdrawing their financial support of the Rocket Boys Musical.

164.    Defendants' illegal actions as specifically pled in this Complaint, including but not limited to the infringing content of the October Sky Musical, outright theft of Plaintiff's intellectual property and conspiracy with Universal to develop the October Sky Musical thereby shutting down the Rocket Boys Musical, was a proximate cause of Plaintiffs losing the engagement at New World Stages in New York.

165.    Plaintiffs suffered lost income from show revenues that they would have earned but for Defendants' illegal actions as pled herein.

166.    Plaintiffs lost investment funds as a result of Defendants' illegal actions as pled herein.

167.    Plaintiffs lost the engagement at the New World Stages in New York as a result of Defendants illegal actions as pled herein.

168.    In or about early 2018, Plaintiffs learned during litigation in West Virginia against some of the Defendants named herein, that Defendants started conspiring with Universal when they started negotiations and development of the October Sky Musical as early as 2012, a time period during which Plaintiffs had an exclusive contract with Hickam for the exclusive live stage rights to the Rocket Boys Book and whatever rights Hickam owned in the October Sky Movie.

169.    Defendants intentionally and/or tortiously interfered with the Underlying Rights and Collaboration Agreement when Defendants negotiated with Universal and started developing a live stage play with Universal despite Plaintiffs having exclusive rights to the stage play as set forth herein and Defendants having knowledge of same.

170.    Defendants intentionally and/or tortiously took actions, alone and in furtherance of a conspiracy with Universal, to interfere with the prospective business relationship between Plaintiffs and investors in the Rocket Boys Musical.

171.    Defendants intentionally and/or tortiously took actions, alone and in furtherance of a conspiracy with Universal, to interfere with the prospective business relationship between Plaintiffs and investors in the Rocket Boys Musical.

172.    Defendants intentionally and/or tortiously took actions, alone and in furtherance of a conspiracy with Universal, to interfere with the prospective business relationship between Plaintiffs and investors in the Rocket Boys Musical.

173.    Defendants intentionally and/or tortiously took actions, alone and in furtherance of a conspiracy with Universal, to interfere with the prospective business between Plaintiffs and New World Stages in New York.

174.    Defendants intentionally and/or tortiously took actions, alone and in furtherance of a conspiracy with Universal, to interfere with the prospective business between Plaintiffs and Hickam.

175.    Defendants took actions, alone and in furtherance of a conspiracy with Defendants, that stopped production of the Rocket Boys Musical and/or that led to the disruption of the Rocket Boys Musical.

176.    Defendants took actions, alone and in furtherance of a conspiracy with Universal, that have severely damaged the professional reputations of Plaintiffs as a result of their wanton acts, reputations painstakingly built over decades within the Broadway community.

177.    Plaintiffs had economic relationships with potential investors in the Rocket Boys Musical and these economic relationships maintained a strong probability of future economic benefit to Plaintiffs, as they made expansion and further development of the Rocket Boys Musical possible and also constitute a pool of investors that Plaintiffs would reap a strong probability of future economic benefit from as it relates to other business ventures.

178.    Defendants knew or should have known of Plaintiffs' investors and Defendants actions, taken alone and in furtherance of a conspiracy with Universal, intentionally harmed, damaged and disrupted the economic relationships between Plaintiffs and potential investors in the Rocket Boy Musical and in other potential business ventures.

179.    Defendants have alleged that the October Sky Musical is the only musical based on the October Sky Movie and the Rocket Boys Book despite the fact that this is untrue.

180.    Defendants were unjustly enriched as a result of the illegal conduct they engaged in as specifically pled in this Complaint.

181.    Under the doctrines of vicarious liability and *respondeat superior*, the actions specified in this Complaint taken by the individual Defendants could be imputed to any of the Defendant corporations that had a legal right to supervise and control the conduct of the individual Defendants and had an obvious and direct financial interest in the actions taken by the individual Defendants.

## COUNT I

**Federal Copyright Infringement Under the Copyright Act (17 U.S.C. §§
501(a) and 106) Asserted by Plaintiffs Against All Defendants**

182.    Plaintiffs repeat and reallege every allegation previously set forth as though fully restated herein.

183.    Plaintiffs have registered copyrights as described specifically in this Complaint and as is evidenced in the public records of the U.S. Copyright Office.

184.    Plaintiffs also have copyrights as a result of use of the copyrights dating back to the dates specifically provided herein.

185.    Defendants have copied constituent, original elements of Plaintiffs' copyrights that are original works that belong to Plaintiffs.

186.    Defendants have encroached upon the exclusive right conferred by Plaintiffs' copyrights by, *inter alia*, reproducing Plaintiffs' copyrights (or sufficiently similar and confusing versions thereof), preparing derivatives of Plaintiffs' copyrights, featuring sufficiently similar and confusing versions of Plaintiffs' copyrights in Defendants' marketing and promotional material, causing elements of Plaintiffs' copywritten music to be publicly performed, causing elements of

Plaintiffs' copywritten lyrics to be performed, and using elements of Plaintiffs' stageplay in Defendants' production of the October Sky Musical.

187.    Through their conduct as set forth in the preceding allegations, Defendants, acting individually and/or in concert, alone and in furtherance of a conspiracy with Universal, have infringed on Plaintiffs' copyright in and to the Rocket Boys Musical in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

188.    Defendants had access to Plaintiffs' copywritten intellectual property for reasons and events stated herein.

189.    Defendants' acts of infringement of Plaintiffs' copyrights, as specifically alleged above, are willful, intentional, and purposeful with complete indifference and disregard for those rights.

190.    The October Sky Musical is substantially similar to the Rocket Boys Musical and infringes upon the copyrighted creation of the Plaintiffs.

191.    The similarities between portions of the October Sky Musical and the copyrighted material contained in the Rocket Boys Musical cannot be attributed to similarities that also exist in the October Sky Movie or the Rocket Boys Book as Defendants' copyright infringements relate to Plaintiffs' proprietary intellectual property that is original and unique to the Rocket Boys Musical, but not contained in the Rocket Boys Book or the October Sky Movie.

## COUNT II

**Contributory Copyright Infringement Under the Copyright Act**
**(17 U.S.C. §§ 501(a) and 106) by Plaintiffs Against all Defendants**

192.    Plaintiffs repeat and reallege every allegation set forth above as though fully restated herein.

193.    Through their conduct as set forth in the preceding allegations, the Marriott Theater related corporations and limited liability companies who are named defendants herein, have knowingly contributed to, induced and/or caused Defendant Mahler, Defendant Thielen and Defendant James to infringe on Plaintiffs' copyrights such that Plaintiffs' copyrights to the music and stageplay of the Rocket Boys Musical was used, in whole or part, in the October Sky Musical.

194.    The Marriott Theater related corporations and limited liability companies who are named defendants herein had knowledge of Plaintiffs' copyrights to the Rocket Boys Musical, the copyrights they infringed on had no non-infringing use to Defendants and the infringement by Defendants were material parts of Plaintiffs' copyrights.

195.    Through their conduct as set forth in the preceding allegations, Universal has knowingly contributed to, induced and/or caused the other named Defendants herein to infringe on Plaintiffs' copyrights such that Plaintiffs' copyrights to the music and stageplay of the Rocket Boys Musical was used, in whole or part, in the October Sky Musical.

196.    Defendants had knowledge of Plaintiffs' copyrights to the Rocket Boys Musical, the copyrights they infringed on had no non-infringing use to Defendants and the infringement by Defendants were material parts of Plaintiffs' copyrights.

197.    Through their conduct as set forth in the preceding allegations, the Marriott Theater related corporations and limited liability companies who are named defendants herein, have knowingly contributed to, induced and/or caused Universal and the Old Globe Theater to infringe on Plaintiffs' copyrights such that Plaintiffs' copyrights to the music and stageplay of the Rocket Boys Musical was used, in whole or part, in other productions.

198.    Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiffs' rights.

## COUNT III

**Federal Infringement of an Unregistered Trademark, False Designation of Origin, False or Misleading Description of Fact, and False or Misleading Representation of Fact Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1), Asserted by Plaintiffs Against all Defendants**

199.    Plaintiffs repeat and reallege every allegation previously set forth as though fully restated herein.

200.    As of the date of the filing of this Complaint, Plaintiffs' Trademarks are not yet registered; however, Plaintiffs' Trademarks are still entitled to protection under 15 U.S.C. § 1125 for the reasons specifically stated herein.

201.    Without Plaintiffs' knowledge, consent or authorization, Defendants used, copied, and reproduced substantially similar graphics and artwork as those contained in Plaintiff's Trademarks for use in Defendants promotional and marketing materials including posters, online advertisements and videos.

202.    Plaintiffs' Trademarks are designations for the Rocket Boys Musical in and among the general public and the theater community that convey certain information to the consumer, including but not limited to the fact that Plaintiffs produced and wrote the production, and the Trademarks have also acquired secondary meaning so that the Trademarks are perceived as identifying and distinguishing the source of the goods.

203.    By virtue of Plaintiffs' longstanding and extensive use of the Trademarks in interstate commerce, the Trademarks have come to serve as a designation of origin for the Rocket Boys Musical and have become valuable symbols of the goodwill Plaintiffs have labored to acquire over the years.

204.    The actions of Defendants in unlawfully using the Trademarks is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of each

Defendant, and their commercial activities, by or with Plaintiffs, and thus constitute trademark infringement, false designation of origin, false or misleading description of fact, and false or misleading representation of fact and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

205.    The actions of Defendants in unlawfully using the Trademarks are likely to cause confusion, or to cause mistake, or to deceive or as to the origin, sponsorship, or approval of Defendants' goods or commercial activities by another person.

206.    The actions of Defendants in unlawfully using the Trademarks in commercial advertising and promotion as detailed herein, have misrepresented the nature, characteristics, source and qualities, of Defendants' goods and commercial activities.

207.    Defendants and their activities, as described in this Complaint, have damaged the reputation of Plaintiffs, and the reputation, and goodwill of Plaintiffs' Trademarks and the value thereof.

208.    Defendants' wrongful acts have irreparably injured Plaintiff and will continue to do so unless and until such acts are enjoined by this Court under 15 U.S.C. § 1116.

209.    Plaintiffs have no adequate remedy at law.

### COUNT IV
**Violation of Section 43(a) of the Lanham Act 15 U.S.C. § 1125(a)**
**Asserted by Plaintiffs Against all Defendants**

210.    Plaintiffs repeat and reallege every allegation previously set forth as though fully restated herein.

211.    Defendants have used the Trademarks without permission in interstate commerce in connection with the provision of goods or services, including the October Sky Musical.

40

212. Defendants unauthorized use and copying of Plaintiffs' Trademarks or sufficiently similar versions of the Plaintiffs' Trademarks has caused and is likely to cause confusion, deception and mistake in part by creating the false and misleading impression that Defendants owned or licensed Plaintiffs' Trademarks, which it did not, that the Trademarks used in Defendants' marketing and promotional materials for the October Sky Musical identify Plaintiffs as the source of the October Sky Musical, or that October Sky Musical is affiliated, connected or associated with Plaintiffs, or have the sponsorship, endorsement, or approval of Plaintiffs.

213. Defendants have made false misrepresentations, false descriptions, and false designations of origin of Defendants goods and Plaintiffs goods in violation of 15 U.S.C. § 1125(a), and Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of the trade and public and injury to Plaintiffs' goodwill and reputation, for which Plaintiffs have no adequate remedy at law.

214. The graphics and artwork used to market and promote the October Sky Musical is sufficiently similar to the Trademarks used to market and promote the Rocket Boys Musical.

215. The goods being provided by Plaintiffs and Defendants are similar in that they are both musicals based on Hickam's life as presented in the Rocket Boys Book and October Sky Movie. As such, the general public would attribute both Plaintiffs' and Defendants' goods to a single source.

216. Defendants' have acted intentionally and maliciously by using Plaintiffs' Trademarks as is evidenced by representations made by some Defendants regarding the fact that the October Sky Musical is the only musical based on the Rocket Boys Book or Hickam's life as represented in the October Sky Movie.

217. Defendants' use of Plaintiffs' Trademarks has caused actual confusion to consumers.

218. Defendants conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiffs.

219. By continuing to utilize the Trademarks, Defendants have impaired the distinctiveness of the Trademarks, and unfairly competed with Plaintiffs and caused irreparable harm to the reputation and goodwill of Plaintiffs' Trademarks and the business reputation of Plaintiffs.

## COUNT V

### Common Law Trademark Infringement
### Asserted by Plaintiffs Against All Defendants

220. Plaintiffs repeat and reallege every allegation previously set forth as though fully restated herein.

221. Plaintiffs' Trademark is protectable and Defendants' use of the Trademark is likely to cause confusion among consumers.

222. Defendants' activities, as described above, have damaged the reputation and goodwill held by Plaintiffs' Trademarks and the value thereof. Defendants' wrongful acts have irreparably injured Plaintiffs as set forth above, and will continue to do so unless and until such acts are enjoined by this Court.

223. Plaintiffs were the first parties to use the Trademarks and thus have a common law right to prevent others from using the Trademarks or from using confusingly similar Trademarks.

## COUNT VI

### Unfair Competition Under the Illinois Uniform Deceptive Practices Act, 815 Ill. Comp. Stat. Ann. 510/2, Asserted by All Plaintiffs Against All Defendants

224. Plaintiffs repeat and reallege every allegation previously set forth as though fully restated herein.

225. Defendants violated the Illinois Unfair Deceptive Practices Act by and through the following acts: (a) passing off Plaintiffs' copyrights and Trademarks, or elements thereof, as their own; (b) causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of the October Sky Musical for reasons specifically pled above; (c) causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by Plaintiffs; and (d) disparaged the Rocket Boys Musical by making assertions that the October Sky Musical was the only musical based on Hickam's life as memorialized in the Rocket Boys Book and October Sky Musical.

226. Defendants, through the unauthorized use and reproduction of Plaintiffs' Trademarks and copyrights, and sufficiently similar altered versions thereof, engaged in an intentional misrepresentation designed to cause consumers to believe that Plaintiffs were somehow associated with the October Sky Musical further misled consumers by improperly benefitting from the goodwill built up by Plaintiffs and their copyrights and Trademarks after Plaintiffs expended nearly ten years of hard work, funds, marketing and promotion to increase the goodwill associated with the infringed-upon copyrights and Trademarks.

## COUNT VII

**Dilution of an Unregistered Trademark Under the Federal Trademark Dilution Act (15 U.S.C. § 1125(c)) Asserted by All Plaintiffs Against All Defendants**

227. Plaintiff repeats and Plaintiffs repeat and reallege every allegation previously set forth as though fully restated herein.

228.    Plaintiffs' Trademarks were famous because they were used in interstate commerce and both featured and advertised in various print and online periodicals, including periodicals read by individuals throughout the United States.

229.    Defendants, without Plaintiff's authority, consent or knowledge, commenced using Plaintiffs Trademarks in commerce, thereby diluting Plaintiffs Trademarks.

230.    Defendants' unauthorized use of versions of Plaintiffs' Trademarks that are substantially similar to the original give rise to an association between the marks that is likely to impair the distinctiveness of Plaintiffs' Trademarks.

231.    Defendants' unauthorized use of modified versions of Plaintiffs' Trademarks give rise to an association between the marks that is likely to harm the reputation of Plaintiffs' Trademarks.

232.    Defendants' use of sufficiently similar versions of Plaintiffs' Trademarks in commerce is likely to cause dilution by blurring because Defendants' use impairs the distinctiveness of Plaintiffs' Trademarks.

233.    Defendants' use of sufficiently similar versions of Plaintiffs' Trademarks in commerce is likely to cause dilution by tarnishing as Defendants' use harms the reputation of Plaintiffs' Trademarks.

## <u>COUNT VIII</u>

**Intentional/Tortious Interference with Prospective Business or Economic Advantage Asserted Under Illinois Common Law by All Plaintiffs Against All Defendants**

234.    Plaintiffs repeat and reallege every allegation previously set forth as though fully restated herein.

235.    Plaintiffs had a reasonable expectation of entering into a valid business relationship with various investors who pledged funds for the production of the Rocket Boys Musical.

236.    Plaintiffs had a reasonable expectation of entering into a valid business relationship with the New World Stage in New York for a run of the Rocket Boys Musical off-Broadway in or around 2016.

237.    Defendants had knowledge of Plaintiffs' expectancy as it relates to Plaintiffs' investors and the engagement at the New World Stage.

238.    Defendants purposefully interfered, alone and as part of a conspiracy with Universal, to prevent the Plaintiffs' legitimate interest from ripening into a valid business relationship with potential investors and the New World Stage as it relates to the Rocket Boys Musical.

239.    Universal purposefully interfered, alone and as part of a conspiracy with other Defendants, to prevent the Plaintiffs' legitimate interest from ripening into a valid business relationship with the Old Globe Theater as it relates to the Rocket Boys Musical.

240.    Plaintiffs suffered economic damages as a result of Defendants interference as it relates to their investors and the engagement at the New World Stage regarding the Rocket Boys Musical.

## COUNT IX

**Unjust Enrichment Asserted Under Illinois Common Law
by All Plaintiffs Against All Defendants**

241.    Plaintiffs repeat and reallege every allegation previously set forth as though fully restated herein.

242.    As a result of all of Defendants' misconduct and illegal actions, taken alone and in furtherance of a conspiracy with Universal, Defendants have been unjustly enriched.

243.    It would be unfair to allow Defendants to retain the enrichment.

244.    Defendants have unjustly retained a benefit to Plaintiffs' detriment.

## COUNT X

### Civil Conspiracy under Illinois Common Law
### Asserted by All Plaintiffs Against All Defendants

245.    Plaintiffs repeat and reallege every allegation previously set as though fully restated herein.

246.    Defendants have agreed to participate with each other in conspiracies to engage in each of the other Counts pled in this Complaint.

247.    Defendants have agreed to participate with Universal in conspiracies to engage in each of the other Counts pled in this Complaint.

248.    Defendants agreed to accomplish by concerted action an unlawful purpose, as specifically pled herein.

249.    Defendant agreed to accomplish by concerted action a lawful purpose by unlawful means, as specifically pled herein.

250.    Defendants committed multiple tortious acts in furtherance of their agreement as specifically pled herein

251.    The unlawful overt acts committed by Defendants as alleged herein have resulted in injuries to Plaintiffs, in furtherance of the common schemes as alleged herein.

## JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on any issue triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays that this Court enter judgment in their favor on each and every Count set forth above, and award it relief including, but not limited, the following:

A.     An Order declaring that Defendants' unauthorized reproduction of Plaintiffs' copyrights, and altered but sufficiently similar and/or confusing derivations thereof, constitutes Federal Copyright Infringement Under the Copyright Act (17 U.S.C. §§ 501(a) and 106);

B.     An Order declaring that Defendants' unauthorized reproduction of Plaintiffs' copyrights, and altered but sufficiently similar and/or confusing derivations thereof, constitutes contributory Copyright Infringement Under the Copyright Act (17 U.S.C. §§ 501(a) and 106);

C.     An Order declaring that Defendants' use of Plaintiffs' Trademarks, and altered but sufficiently similar and/or confusing derivations thereof, was an unlawful infringement and constitutes unfair competition under Section 43(a) of the Lanham Act 15 U.S.C. § 1125(a) and Illinois common law.

D.     An Order declaring that Defendants' use of Plaintiffs' Trademarks, and altered but sufficiently similar and/or confusing derivations thereof, was an unlawful infringement and constitutes False Designation of Origin, False or Misleading Description of Fact and/or False or Misleading Representation of Fact under Section 43(a)(1)(A) of the Lanham Act 15 U.S.C. § 1125(a)(1);

E.     An Order declaring that Defendants' use of Plaintiff's Trademarks, and altered but sufficiently similar and/or confusing derivations thereof, constitutes Unfair Competition under Illinois Uniform Deceptive Practices Act, 815 Ill. Comp. Stat. Ann. 510/2;

F.      An Order declaring that Defendants' use of Plaintiff's Trademarks, and altered but sufficiently similar and/or confusing derivations thereof, constitutes Dilution of an Unregistered Trademark under the Federal Trademark Dilution Act (15 U.S.C. § 1125(c));

G.      An Order declaring that Defendants' actions constitute Intentional/Tortious Interference with Prospective Economic Advantage and Business Relations under Illinois Common Law;

H.      An Order declaring that Defendants' actions constitute Unjust Enrichment Asserted under Illinois Common Law by All Plaintiffs Against All Defendants;

I.      An Order declaring that Defendants concerted actions constitute conspiracy to commit each of the Counts pled in this Complaint;

J.      A preliminary and permanent injunction issued under 15 U.S.C. §1116 enjoining Defendants and their respective employees, agents, officers, directors, members, shareholders, subsidiaries, related companies, affiliates, and all persons in active concert or participation with any of them from using or otherwise using Plaintiffs' Trademarks or sufficiently similar and/or confusing derivations thereof under 15 U.S.C. §1116;

K.      An Order issued and judgment entered under 15 U.S.C. §1117(a) wherein Plaintiffs shall be entitled to recover Defendants' profits associated with the sale from all products wherein Defendants used Plaintiffs' Trademarks, and altered but sufficiently similar and/or confusing derivations thereof;

L.      An Order issued and judgment entered under 15 U.S.C. §1117(a) wherein Plaintiffs shall be entitled to recover all damages sustained by Plaintiffs as a result of Defendants' improper use of Plaintiffs' Trademarks, and altered but sufficiently similar and/or confusing derivations thereof;

M.    An Order issued and judgment entered under 15 U.S.C. §1117(a) wherein Plaintiffs shall be entitled to recover all costs of the action incurred by Plaintiffs as a result of Defendants' improper use of Plaintiff's Trademarks, and altered but sufficiently similar and/or confusing derivations thereof;

N.    An Order issued and judgment entered under 15 U.S.C. §1117(a) wherein Plaintiffs shall be entitled to recover reasonable attorneys' fees from Defendants a result of Defendants' improper use of Plaintiffs' Trademarks, and altered but sufficiently similar and/or confusing derivations thereof;

L.    A temporary and final injunction issued under 17 U.S. Code § 502 enjoining Defendants and their respective employees, agents, officers, directors, members, shareholders, subsidiaries, related companies, affiliates, and all persons in active concert or participation with any of them from copying or otherwise reproducing Plaintiffs' Trademarks or sufficiently similar and/or confusing derivations thereof;

M.    An Order issued and judgment entered under 17 U.S.C. §504 wherein Plaintiff shall be entitled to recover all costs of the action incurred by Plaintiffs as a result of Defendants' improper copying and reproduction of Plaintiff's Trademarks, and altered but sufficiently similar and/or confusing derivations thereof;

R.    An Order issued and judgment entered under 17 U.S.C. §504 wherein Plaintiffs shall be entitled to recover all actual damages incurred by Plaintiffs as a result of Defendants' improper copying and reproduction of Plaintiffs' Trademarks, and altered but sufficiently similar and/or confusing derivations thereof;

S.    An Order issued and judgment entered under 17 U.S.C. §504 wherein Plaintiffs shall be entitled to recover profits of the Defendants from goods that used the improper copying

and reproduction of Plaintiffs' Trademarks for their marketing and promotion and altered but sufficiently similar and/or confusing derivations thereof or that are otherwise attributable to Defendants' copyright infringement, including an accounting of and a constructive trust with respect to such profits, or, alternatively, the maximum statutory damages as provided in 17 U.S.C. § 504(c).

T.      An Order issued and judgment entered under 17 U.S.C. §505 wherein Plaintiffs shall be entitled to recover full costs and attorney's fees from the Defendants as a result of Defendants' copyright infringement;

U.      An Order issued and judgment entered wherein Plaintiffs shall be entitled to recover actual damages and disgorgement of profits for copyright infringement from the Defendants as a result of Defendants' copyright infringement;

V.      An Order issued and judgment entered under 17 U.S.C. §505 wherein Plaintiffs shall be entitled to recover full costs and attorney's fees from the Defendants as a result of Defendants' copyright infringement;

X.      A temporary and final injunction issued enjoining Defendants and their respective employees, agents, officers, directors, members, shareholders, subsidiaries, related companies, affiliates, and all persons in active concert or participation with any of them from using, copying or otherwise reproducing Plaintiffs' copyrights or Trademarks, or sufficiently similar and/or confusing derivations thereof, as a result of Defendants' infringement of Plaintiffs' copyrights and Trademarks which constitutes unfair trade practices under federal law as pled herein;

Y.      Plaintiffs are entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs and reasonable attorney's fees pursuant to 15 U.S.C. § § 1125(a), 1116 and 1117 as a result of Defendants' unfair competition;

Z.      An Order directing Defendants to file with this Court and serve on Plaintiffs' attorneys, thirty (30) days after the entry of any permanent injunction, a report in writing and under oath setting forth in detail the manner and form in which they have complied with the injunction;

AA.     An Order requiring Defendants to pay Plaintiffs compensatory damages and punitive damages in an amount as yet undetermined for each of the above stated Counts;

BB.     An Order requiring Defendants to pay Plaintiff compensatory damages and lost profits in an amount as yet undetermined caused by the foregoing unlawful acts, and trebling such damages in accordance with 15 U.S.C. § 1117 and other applicable laws;

CC.     An Order requiring Defendants to pay Plaintiffs' costs and attorneys' fees in this action pursuant to 15 U.S.C. § 1117 and other applicable laws;

DD.     An Order requiring Defendants to pay compensatory and punitive damages, and restitution, directly to Plaintiff as a result of their violation of the above stated Counts;

EE.     An Order requiring Defendants to pay all compensatory damages, statutory damages and punitive damages allowable for each of the Counts pled;

FF.     An Order requiring Defendants to pay pre-judgment and post-judgment interest as permitted by law; and

GG.     For such other relief as this Court deems rightful and appropriate.

Dated: October 4, 2018

Respectfully submitted,

*/s/ Katrina Carroll*
Katrina Carroll
Kyle A. Shamberg
LITE DEPALMA & GREENBERG, LLC
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: 312-750-1265
kcarroll@litedepalma.com
kshamberg@litedepalma.com

Tony Richa (pro hac vice)
RICHA LAW GROUP, P.C.
One Bethesda Center
4800 Hampden Lane, Suite 200
Bethesda, MD 20814
Telephone: 301-424-0222

Stephen P. New  (pro hac vice)
THE LAW OFFICE OF STEPHEN P. NEW
1114 Main Street
Beckley, WV 25801
Telephone: 304-250-6017

Michael J. Flannery, Esq.
Bar No. 52714
CUNEO GILBERT & LADUCA, LLP
7733 Forsyth Boulevard, Suite 1675
St. Louis, MO 63105
Telephone: 202-789-3960
mflannery@cuneolaw.com

Charles J. LaDuca (pro hac vice)
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Avenue, Suite 200
Washington, D.C. 20018
Telephone:  202-789-3960

*Attorneys for Plaintiffs*