**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRIGHTER SKY PRODUCTIONS, LLC, DAN TRAMON, DIANA BELKOWSKI, and CARL ANTHONY TRAMON,<br><br>        Plaintiffs,<br><br>    vs.<br><br>MARRIOTT INTERNATIONAL, INC.; DTRS LINCOLNSHIRE, LLC; MARRIOTT HOTEL SERVICES, INC.; STRATEGIC HOTELS & RESORTS, LLC; OLD GLOBE THEATER; RFMBG LINCOLNSHIRE, LLC; LA-RFMBG LINCOLNSHIRE, LLC; MICHAEL MAHLER; AARON THIELEN; and TERRY JAMES,<br><br>        Defendants. | CASE NO. 18-CV-6723-CN<br><br>JUDGE CHARLES R. NORGLE, SR. |

**<u>DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 2

LEGAL STANDARD.................................................................................................... 4

ARGUMENT ................................................................................................................ 5

      I.    The Complaint Fails to State a Claim for Copyright Infringement......................... 5

      II.   The Complaint Fails to State a Claim under the Lanham Act................................ 8

      III.  Counts V and VI Must Be Dismissed for the Same Reasons as the
           Lanham Act Claims. ....................................................................................... 12

      IV.  Plaintiffs' Tortious Interference Claim Fails for Two Independent
           Reasons........................................................................................................... 13

           A.   Plaintiffs Do Not – and Cannot – Allege That These
                 Defendants Had Any Knowledge of Any of Plaintiffs'
                 Prospective Business Relationships. ........................................................ 13

           B.   Plaintiffs Do Not – and Cannot – Allege That Defendants
                 Directed Any Conduct at Any Third Party That Was in a
                 Business Relationship with Plaintiffs....................................................... 13

      V.   The Unjust Enrichment and Conspiracy Allegations Fail to State a
           Claim. ............................................................................................................ 14

      VI.  The Complaint Fails to State any Claim against the Corporate Entity
           Defendants....................................................................................................... 15

CONCLUSION............................................................................................................ 15

CERTIFICATE OF SERVICE ..................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................ passim

*Baby Buddies, Inc. v. Toys R Us, Inc.*,
    611 F.3d 1308 (11th Cir. 2010) ...........................................8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...........................................................4, 5

*Borsellino v. Goldman Sachs Group, Inc.*,
    477 F.3d 502 (7th Cir. 2007) .............................................15

*Boston Duck Tours, LP v. Super Duck Tours, LLC*,
    531 F.3d 1 (1st Cir. 2008) ..................................................10

*Bubble Genius LLC v. Smith*,
    239 F. Supp. 3d 586 (E.D.N.Y. 2017) ................................11

*Bucklew v. Hawkins, Ash, Baptie & Co.*,
    329 F.3d 923 (7th Cir. 2003) ...............................................8

*Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd.*,
    893 N.E.2d 981 (Ill. App. Ct. 2008) .................................13

*Coach, Inc. v. Celco Customs Services Co.*,
    2012 WL 12883972 (C.D. Cal. Oct. 31, 2012) ....................8

*Custom Vehicles, Inc. v. Forest River, Inc.*,
    476 F.3d 481 (7th Cir. 2007) .............................................10

*Davidson v. Worldwide Asset Purchasing, LLC*,
    914 F. Supp. 2d 918 (N.D. Ill. 2012) .................................15

*Desmond v. Chicago Boxed Beef Distributors, Inc.*,
    921 F. Supp. 2d 872 (N.D. Ill. 2013) .................................12

*Disney Enterprises, Inc. v. Tarano*,
    2013 WL 12156455 (M.D. Fla. June 24, 2013) ....................8

*Esplanade Productions, Inc. v. Walt Disney Co.*,
    2017 WL 5635024 (C.D. Cal. July 11, 2017) .......................6

*Fair Wind Sailing, Inc. v. Dempster*,
  764 F.3d 303 (3d Cir. 2014)..........................................................................9

*Feist Publications, Inc. v. Rural Telephone Service Co.*,
  499 U.S. 340 (1991)................................................................................5, 7

*Forest River, Inc. v. Winnebago Industries, Inc.*,
  2017 WL 590245 (N.D. Ind. Feb. 14, 2017).................................................9

*Fortres Grand Corp. v. Warner Bros. Entertainment Inc.*,
  763 F.3d 696 (7th Cir. 2014) ......................................................................11

*Go Pro Ltd. v. River Graphics, Inc.*,
  2006 WL 898147 (D. Colo. Apr. 5, 2006)....................................................10

*Gorski v. Gymboree Corp.*,
  2014 WL 3533324 (N.D. Cal. July 16, 2014)................................................6

*Hackman v. Dickerson Realtors, Inc.*,
  557 F. Supp. 2d 938 (N.D. Ill. 2008) .........................................................14

*Harney v. Sony Pictures Television, Inc.*,
  704 F.3d 173 (1st Cir. 2013)........................................................................8

*Hayes v. Minaj*,
  2012 WL 12887393 (C.D. Cal. Dec. 18, 2012) ...........................................6

*Ho v. Taflove*,
  648 F.3d 489 (7th Cir. 2011) .......................................................................5

*Hobbs v. John*,
  722 F.3d 1089 (7th Cir. 2013) .....................................................................7

*In re Chemical Dynamics, Inc.*,
  839 F.2d 1569 (Fed. Cir. 1988)..................................................................10

*In re Eagle Crest, Inc.*,
  96 U.S.P.Q.2d 1227 (T.T.A.B. 2010) ..........................................................10

*Le Book Publishing, Inc. v. Black Book Photography, Inc.*,
  418 F. Supp. 2d 305 (S.D.N.Y. 2005).........................................................11

*Matal v. Tam*,
  137 S. Ct. 1744 (2017)................................................................................9

*McClure v. Owens Corning Fiberglass*,
  720 N.E.2d 242 (Ill. 1999) ........................................................................14

*McIntosh v. Magna Systems, Inc.*,
    539 F. Supp. 1185 (N.D. Ill. 1982) .......................................................................14

*Mintz v. Subaru of America, Inc.*,
    2016 WL 5909360 (N.D. Cal. Oct. 11, 2016), *aff'd*, 716 F. App'x 618 (9th
    Cir. 2017) ...............................................................................................................11

*MJ & Partners Restaurant Ltd. Partnership v. Zadikoff*,
    10 F. Supp. 2d 922 (N.D. Ill. 1998) .......................................................................12

*Monotype Imaging, Inc. v. Bitstream, Inc.*,
    376 F. Supp. 2d 877 (N.D. Ill. 2005) .....................................................................15

*National Lighting Co. v. Bridge Metal Industries, LLC*,
    601 F. Supp. 2d 556 (S.D.N.Y. 2009) .....................................................................9

*Orgone Capital III, LLC v. Daubenspeck*,
    912 F.3d 1039 (7th Cir. 2019) ................................................................................12

*Packman v. Chicago Tribune Co.*,
    267 F.3d 628 (7th Cir. 2001) ....................................................................................8

*Peters v. West*,
    692 F.3d 629 (7th Cir. 2012) ....................................................................................5

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) ..................................................................................14

*Redelmann v. Claire Sprayway, Inc.*,
    874 N.E.2d 230 (Ill. App. Ct. 2007) .......................................................................14

*Satava v. Lowry*,
    323 F.3d 805 (9th Cir. 2003) ....................................................................................7

*Schrock v. Learning Curve International, Inc.*,
    586 F.3d 513 (7th Cir. 2009) ....................................................................................5

*Silicon Philosophies, Inc. v. Omni Digital Media*,
    2014 WL 12561097 (C.D. Cal. Aug. 26, 2014)........................................................8

*Teal Bay Alliances, LLC v. Southbound One, Inc.*,
    2015 WL 401251 (D. Md. Jan. 26, 2015) ..............................................................10

*Tovey v. Nike, Inc.*,
    2014 WL 3510975 (N.D. Ohio July 10, 2014) .......................................................10

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992)..................................................................................................9

*Uncommon, LLC v. Spigen, Inc.*,
  926 F.3d 409 (7th Cir. 2019) ...................................................................................11

*Zenith Electronics Corp. v. Exzec, Inc.*,
  1997 WL 223067 (N.D. Ill. Mar. 27, 1997)..............................................................14

**STATUTES**

15 U.S.C. § 1127 ................................................................................................................9

17 U.S.C. § 103(b) .............................................................................................................5

Lanham Act Section 43(a) .................................................................................................8

Lanham Act Section 43(c) .................................................................................................8

Uniform Deceptive Trade Practices Act .........................................................................12

**OTHER AUTHORITIES**

1 McCarthy on Trademarks & Unfair Competition §§ 3:6, 7:24 (5th ed.)....................10

4 Nimmer on Copyright § 13.03[B][2] .............................................................................6

Federal Rule of Civil Procedure 12(b)(6) ...........................................................1, 2, 4, 11

Federal Rule of Evidence 201(b) .....................................................................................12

USPTO Trademark Manual of Examining Procedure § 1202.03 ...................................10

Defendants Marriott International, Inc., DTRS Lincolnshire, LLC, Marriott Hotel Services, Inc. ("Marriott Services"), Strategic Hotels & Resorts LLC ("Strategic Hotels"), Michael Mahler, Aaron Thielen, and Terry James (collectively, "Defendants") respectfully move this Court to dismiss the Amended Complaint (the "Complaint" or "Am. Compl.") filed by Plaintiffs Brighter Sky Productions, LLC, Dan Tramon, Diana Belkowski, and Carl Anthony Tramon (collectively, "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **INTRODUCTION**

For years, Plaintiffs have been claiming that a stage musical called *October Sky*, which was performed in 2015 at the Marriott Lincolnshire Theatre, infringes their own stage musical called *Rocket Boys* in some unarticulated way. They already have filed one lawsuit based on that assertion, which was dismissed last year. Their collaborator, Homer Hickam, filed his own lawsuit based on the *October Sky* musical, which settled two years ago. Over the years, Defendants' counsel has repeatedly asked Plaintiffs to specify what they contend was copied – a particular concern here since the two works are based on the same underlying source material. Yet, although Plaintiffs have had a full script and score of the *October Sky* musical for over a year, they steadfastly have refused to identify any original scenes, lines of dialogue, lyrics, or musical passages that they contend were copied in the *October Sky* musical.

In this latest lawsuit, Plaintiffs accuse a host of defendants of infringing their copyright and trademark rights in the *Rocket Boys* musical. But their Amended Complaint yet again fails to identify any original expression from the *Rocket Boys* musical that purportedly was copied. Instead, Plaintiffs base their copyright claim on structural similarities between the two works that are traceable to their common underlying source material, not to any original material authored by Plaintiffs. Furthermore, Plaintiffs fail to specify what elements of their promotional artwork they

1

claim to be protectable trademarks, and the pictures attached to their Complaint show their trademark claims to be based on unprotectable decorative elements rather than any word or logo that serves the essential trademark function of identifying the source of Plaintiffs' good or services. These claims therefore should be dismissed under Rule 12(b)(6).[1]

## FACTUAL BACKGROUND

This case concerns two stage musicals based on the same pre-existing source material – namely, a memoir entitled *Rocket Boys* written by Homer H. Hickam, Jr. and published in 1998 (the "Book"). The Book tells the story of how a teenaged Hickam and his friends (the titular "rocket boys"), coming of age in a small West Virginia coal mining town and inspired by the dawn of the "space race" in the late 1950s, taught themselves to design, build, and launch their own rockets, winning a National Science Fair gold medal and college scholarships. The Book was adapted into the movie *October Sky*, released by Universal Pictures in 1999 (the "Film"). Am. Compl. ¶ 2.

Through a series of agreements in the 1990s, Hickam granted exclusive film and stage rights in the Book to Universal. In 2007, Hickam went back to Universal and negotiated to obtain the right to create his own play based on the Book. He licensed those stage rights to Plaintiffs here, who created a musical called *Rocket Boys* (the "Rocket Boys Musical"). Am. Compl. ¶¶ 28, 30.[2] The Rocket Boys Musical was performed sporadically, in isolated venues, over the next few years. *Id.* ¶¶ 32-34. In 2013, Universal Theatrical Productions, a division of Universal Studios, contracted

---

[1] The Court also should dismiss Plaintiffs' state law claims, many of which are duplicative of the copyright and Lanham Act claims, for the same reasons. The tortious interference claim, in particular, should be dismissed because Plaintiffs have completely failed to allege – and, indeed, cannot truthfully allege – that any of the Defendants in this case had any knowledge of Plaintiffs' alleged business expectations with third parties or that the Defendants directed any conduct toward any of those third parties.

[2] Specifically, Universal granted exclusive stage rights to Hickam for five years, after which, in 2012, Universal and Hickam both had non-exclusive rights to develop a stage adaptation of the Book. *Id.* ¶ 31.

with Aaron Thielen, Michael Mahler, and the Lincolnshire Theatre to create and produce a stage musical based on the Book and the Film, called *October Sky*, which was performed in 2015 at the Lincolnshire Theatre outside of Chicago (the "October Sky Musical"). Plaintiffs claim the October Sky Musical infringes the Rocket Boys Musical. *Id*. ¶¶ 64-74.

Plaintiffs first made this claim in May 2016, when their former counsel sent a demand letter to Universal. Universal responded by proposing that the parties exchange copies of the scripts and scores of the respective musicals, so that a proper copyright similarity analysis could be performed. Plaintiffs rejected that proposal. A year later, in June 2017, Plaintiffs filed suit for copyright infringement in federal court in West Virginia against Thielen, Mahler, the Marriott Lincolnshire Theatre, and Marriott International. Instead of identifying what they claimed was similar in the two works, Plaintiffs asserted vaguely that the two plays had similar "motifs and patterns," "scene choices and sequences," "scenes and dialogue," and "language."[3]

In the meantime, Hickam sued Universal in California in 2016, claiming that Universal had breached its agreements with him and violated his right of publicity by licensing the October Sky Musical. Universal obtained dismissal of most of Hickam's claims on a motion, and the case settled while it was on interlocutory appeal. As part of the settlement, Hickam released all claims that he had against Universal. Plaintiffs also released any claims they had or might have against Universal. Hickam and Plaintiffs retained the rights to perform the Rocket Boys Musical going forward only at non-profit theatres in the State of West Virginia. Am. Compl. ¶¶ 38.

Plaintiffs filed this lawsuit in October 2018. Despite having the complete script and score of

---

[3] The defendants moved to dismiss for lack of personal jurisdiction, but discovery continued while the motion was pending. By April 2018, the defendants had produced complete copies of the script and musical score for the October Sky Musical and served interrogatories asking Plaintiffs finally to identify what they claimed was similar in the two works. In May 2018, just days before the Plaintiffs' responses were due, the West Virginia court granted the personal jurisdiction motion and dismissed the case without prejudice.

the October Sky Musical, Plaintiffs elected to recycle, nearly verbatim, the vague and conclusory allegations of copyright infringement from their West Virginia complaint. *See* Dkt. No. 1 ¶¶ 143-146, 151-152. The Amended Complaint, filed in July 2019, again merely refers to unspecified "[r]hythmic patterns and melodic motifs," "lyric[s]," "musical structures," and "musical motifs," Am. Compl. ¶¶ 68(a), (d), (i), (m), 72, that purportedly were copied, but fails to identify a single original scene, line of dialogue, lyric, or musical passage that is common to both musicals. Plaintiffs also now assert Lanham Act claims, along with state law claims for trademark infringement, unfair competition, unjust enrichment, and interference with prospective business advantage. The trademark claims are similarly obscure: they fail to identify the words, symbols, or images in which Plaintiffs are claiming trademark rights, instead referring broadly to their "artwork and logo," then attaching three images to their Complaint, all of which are different. *See id.* ¶ 50 & Ex. A.

Plaintiffs bring this lawsuit against a host of corporate entity defendants which, at one time or another, had an ownership interest in the real estate where the Lincolnshire Hotel is located, had some role in managing the hotel property, or (in the case of Marriott International and Strategic Hotels) was merely a parent company or "successor owner." None of these entity defendants is alleged to have had any role whatsoever in the creation or production of the October Sky Musical.[4]

## **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[4] Additionally, three of the current entity Defendants – the Old Globe Theater, RFMBG Lincolnshire, LLC, and LA-RFMGB Lincolnshire, LLC – do not appear to have been served and are not represented by the undersigned counsel.

For a claim to have facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## ARGUMENT

### I.      The Complaint Fails to State a Claim for Copyright Infringement.

To state a claim for copyright infringement, Plaintiffs must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). To establish the second element, copying, Plaintiffs must show that the Defendants' play was "substantially similar" to theirs, *id.* at 633 – that is, "that the two works share enough unique features to give rise to a breach of the duty not to copy another's work," *id.* at 633-34.

Because Plaintiffs' play is a derivative work based on the Book, their copyright necessarily is "thin" and "extend[s] only to the incremental original expression contributed by [Plaintiffs]." *See Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 521 (7th Cir. 2009); *see also* 17 U.S.C. § 103(b). Plaintiffs accordingly must demonstrate that any alleged similarities between the two plays relate to these incremental original elements that Plaintiffs added in their play, rather than to the common underlying source material. *Peters*, 692 F.3d at 632. In other words, Plaintiffs have no rights in the settings, the characters and their relationships, or the plot, scenes, and events depicted in the Book and cannot base their infringement claims on anything found in the Book.

Finally, Plaintiffs must demonstrate that any alleged similarities between the two plays relate to copyrightable expression, not to uncopyrightable ideas. "The Copyright Act protects the expression of ideas, but exempts the ideas themselves from protection." *Ho v. Taflove*, 648 F.3d

489, 497 (7th Cir. 2011).[5]

The Complaint fails adequately to allege a claim for direct or contributory copyright infringement claim because it fails to identify any copyrightable expression original to Plaintiffs' play that purportedly was copied by Defendants. This is fatal to Plaintiffs' claim, because to plead substantial similarity and avoid dismissal, Plaintiffs "must identify the particular aspects of [their work] that are allegedly copied." *Hayes v. Minaj*, 2012 WL 12887393, at *5 (C.D. Cal. Dec. 18, 2012); *accord Gorski v. Gymboree Corp.*, 2014 WL 3533324, at *4 (N.D. Cal. July 16, 2014).

The Complaint's vague references to unspecified "[r]hythmic patterns and melodic motifs," "lyric[s]," "musical structures," and "musical motifs," Am. Compl. ¶¶ 68(a), (d), (i), (m), 72, are not enough to state a claim. In *Hayes*, the court dismissed a copyright claim where the plaintiff asserted merely that the allegedly infringing work copied her book's "content look picture stor[ies] [] and actions." 2012 WL 12887393, at *5. And in *Esplanade Productions, Inc. v. Walt Disney Co.*, 2017 WL 5635024 (C.D. Cal. July 11, 2017), even though the complaint alleged at considerable length that the plaintiff's work was substantially similar to the defendants' film in terms of their plot elements, characters, and dialogue, the court held that the allegations were "conclusory" and "not factually specific enough" to support a claim. *Id.* at *5.

Nor can Plaintiffs base their claim on allegations that there are similarities in "concept" between the musical numbers in both plays. Am. Compl. ¶ 68, 68(d), (g), (h), (i), (k), (l), (m). That would impermissibly extend copyright protection to ideas instead of expression. The "concept" of a song "constitut[ing] a musical guided tour of life in Coalwood," ¶ 68(b), or in which characters

---

[5] This bedrock principle of copyright law is essential to ensure that no author can improperly gain a monopoly over storytelling tools, devices, and conventions that are the building blocks of many literary and dramatic works. As the Nimmer treatise explains, "To grant property status to a mere idea would permit withdrawing the idea from the stock of materials open to other authors, thereby narrowing the field of thought open for development and exploitation." 4 NIMMER ON COPYRIGHT § 13.03[B][2] (rev. ed.).

"show hope that with more tries they will eventually succeed," ¶ 68(g), is not copyrightable.  In *Hobbs v. John*, 722 F.3d 1089 (7th Cir. 2013), for example, the Seventh Circuit affirmed the dismissal of a copyright claim based on two songs that shared a "theme of impossible love between a Western man and a Communist woman during the Cold War."  *Id.* at 1094.  As noted above, the Amended Complaint fails to identify any specific similarities in the melodies or lyrics of any of the songs.  Thus, they have alleged no more than that two musicals based on the same underlying source material have songs illustrating the same basic story ideas.

Plaintiffs' allegation that Defendants copied Plaintiffs' "selection of which scenes to include, the order in which these scenes are placed, and which scenes to exclude," Am. Compl. ¶ 65, fares no better.  Although an author's selection and arrangement of preexisting material may, in some cases, be eligible for copyright protection, that copyright is also "thin," *see Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991), and exists only to the extent that the selection and arrangement itself reflects a sufficient degree of originality.  *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003).  Plaintiffs fail to allege that there was anything original about their selection and arrangement of scenes from the Book.  So far as can be gleaned from the Complaint, Plaintiffs simply chose the most significant and dramatically satisfying scenes and arranged them in the same order as they appear in the Book.  It stands to reason that Defendants' adaptation of the same Book should have many of the same scenes in roughly the same order.[6]

Nor can Plaintiffs base their claim on the many scenes from the Book that allegedly were *omitted* from both plays, because a copyright infringement claim must be based on the actual

---

[6] For this reason, Plaintiffs' "statistical analysis" of the scenes in the two plays adds nothing to their claim. *See* Am. Compl. ¶¶ 66-67.  Choosing scenes from a book for inclusion in a stage adaptation is not a process of random selection, and necessarily requires retaining key scenes that move the story forward.  It should come as no surprise that those key scenes can be found in both Plaintiffs' and Defendants' plays.

expressive content in the plaintiff's work.  *See, e.g.*, *Harney v. Sony Pictures Television, Inc.*, 704 F.3d 173, 182 (1st Cir. 2013) (courts must look to whether the defendant "appropriat[ed] the original expression" of the plaintiff's work); *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1316 (11th Cir. 2010) (only "elements of original expression" are subject to copyright protection); *Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 930 (7th Cir. 2003) ("The only element of an expressive work that is infringed by copying is an expressive element.").  In *Bucklew*, for instance, the court explained that no finding of infringement could be based on the defendant's computer forms' omission of a vertical line, because "a nonexistent line has no expressive content, except possibly in the most advanced modern art."  329 F.3d at 930.

## II.     The Complaint Fails to State a Claim under the Lanham Act.

Counts III and IV, which assert claims under Section 43(a) of the Lanham Act and are premised on Defendants' alleged use of Plaintiffs' trademarks, fail to state a claim because the Complaint does not plausibly allege either that Plaintiffs own any protectable trademarks or that Defendants' alleged marketing materials create any likelihood of confusion.[7]  It is well established that a plaintiff asserting a trademark infringement claim must "clearly identify the trademarks and infringing marks at issue."  *Coach, Inc. v. Celco Customs Servs. Co.*, 2012 WL 12883972, at *4 (C.D. Cal. Oct. 31, 2012).  If he does not do so, "the Court cannot assess whether the plaintiff has a legitimate trademark interest."  *Silicon Philosophies, Inc. v. Omni Digital Media*, 2014 WL 12561097, at *1 (C.D. Cal. Aug. 26, 2014) (dismissing Lanham Act claims where marks not identified).[8]

---

[7] To state a claim under Section 43(a) of the Lanham Act, Plaintiffs must plausibly allege (1) that their marks are protectable, and (2) that Defendants' use of the marks is likely to cause confusion among consumers. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001).

[8] Similarly, in *Coach* the court dismissed an infringement claim where the complaint listed 50 trademarks but did not identify which were at issue in the litigation.  2012 WL 12883972, at *4; *see also Disney Enters., Inc. v. Tarano*, 2013 WL 12156455, at *1 (M.D. Fla. June 24, 2013) (dismissing trademark claim where complaint listed a "representative sample" of marks rather than identifying the specific mark infringed).

Here, Plaintiffs never specify what they are claiming as their trademarks. They do not identify any word, name, symbol, or device that they consistently have used to identify themselves as the source of any goods or services. *See* 15 U.S.C. § 1127 (defining "trademark" under the Lanham Act); *Matal v. Tam*, 137 S. Ct. 1744, 1751 (2017) (explaining the basis for trademark protection). Instead, they cryptically define the trademarks at issue as "Plaintiffs' artwork and logo." Am. Compl. ¶ 50. The images attached to the Complaint do not remedy this vagueness, because the *Rocket Boys* materials on pages 1 and 2 of Plaintiffs' exhibit are completely dissimilar in terms of the font used for the title, the image background, and the rendering and poses of the silhouetted figures. *See* Am. Compl. Grp. Ex. A.

Because Plaintiffs appear to be claiming rights in a combination of graphic elements rather than in any single logo or slogan, theirs is essentially a trade dress claim rather than a trademark claim. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 n.1 (1992) (discussing what constitutes trade dress). But a plaintiff bringing a trade dress claim must articulate the discrete elements that constitute the trade dress, which Plaintiffs have not done. *See*, *e.g.*, *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 309-10 (3d Cir. 2014); *Forest River, Inc. v. Winnebago Indus., Inc.*, 2017 WL 590245, at *2-3 (N.D. Ind. Feb. 14, 2017); *Nat'l Lighting Co. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556, 561-63 (S.D.N.Y. 2009). It is not sufficient for Plaintiffs merely to provide images of the alleged trade dress. *See*, *e.g.*, *Forest River*, 2017 WL 590245, at *3; *Nat'l Lighting Co.*, 601 F. Supp. 2d at 562-63. To the extent the Complaint's list of purported similarities between Plaintiffs' and Defendants' alleged promotional materials suggests the elements of their trade dress, *see* Am. Compl. ¶ 76, that list is contradicted by Plaintiffs' own exhibit, in which all three listed elements never appear together in the same image.[9]

---

[9] The *Rocket Boys* material on page 1 of the exhibit, for example, does not include "a silhouetted figure[]

Moreover, Plaintiffs do not plausibly allege that the elements they seek to protect function as trademarks at all. "It is well settled that 'not every designation that is placed or used on or in connection with a product necessarily functions as a trademark for said product.'" *In re Eagle Crest, Inc.*, 96 U.S.P.Q.2d 1227, at *2 (T.T.A.B. 2010); *accord* 1 McCarthy on Trademarks & Unfair Competition §§ 3:6, 7:24 (5th ed.) ("McCarthy"). The designation must "perform[] the trademark function of identifying the source of the merchandise to the customers." *In re Chemical Dynamics, Inc.*, 839 F.2d 1569, 1571 (Fed. Cir. 1988). Rather than identifying *Plaintiffs* as the source of the Rocket Boys Musical, the images attached to the Complaint plainly are unprotectable decorative elements illustrating the musical's *subject-matter*: the story of a group of boys in West Virginia who learn how to create and launch their own rockets. Indeed, the Complaint itself states that the purported trademarks "identif[y]" the "Rocket Boys Musical," not Plaintiffs. Am. Compl. ¶ 50.[10]

Even assuming Plaintiffs could allege that their "rocket" images function as trademarks, the elements identified by Plaintiffs are descriptive because they merely illustrate the contents of their play. *E.g.*, *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 28-29 (1st Cir. 2008) (image of a duck splashing in water found descriptive of "duck tours" that use amphibious vehicles); McCarthy § 7:36. Accordingly, the purported marks can receive trademark protection only if Plaintiffs plausibly allege that they have acquired "secondary meaning" – *i.e.*, that they have "come to be uniquely associated with" Plaintiffs. *Custom Vehicles, Inc. v. Forest River, Inc.*, 476

---

with arms upraised seemingly in victory," whereas the material on page 2 does not include "a rocket flying through the second 'O'" in the title. The material on page 3 does not include any silhouetted figures at all.

[10] *See Tovey v. Nike, Inc.*, 2014 WL 3510975, at *8 (N.D. Ohio July 10, 2014) ("Subject matter that is merely a decorative feature does not identify and distinguish the [relevant services] and, thus, does not function as a trademark.") (quoting USPTO Trademark Manual of Examining Procedure § 1202.03); *accord Teal Bay Alliances, LLC v. Southbound One, Inc.*, 2015 WL 401251, at *11 (D. Md. Jan. 26, 2015); *Go Pro Ltd. v. River Graphics, Inc.*, 2006 WL 898147, at *4 (D. Colo. Apr. 5, 2006).

F.3d 481, 483 (7th Cir. 2007).[11]  This Plaintiffs have not done.  Their secondary meaning allegations amount to little more than "formulaic recitation[s] of the elements of a cause of action," which under *Iqbal* "will not do."  *Iqbal*, 556 U.S. at 678.[12]

Finally, even assuming the elements identified by Plaintiffs are protectable as trademarks, Plaintiffs have not plausibly alleged that Defendants' alleged promotional materials create a likelihood of confusion.  "Allegations of consumer confusion in a trademark suit, just like any allegations in any suit, cannot save a claim if they are implausible."  *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 706 (7th Cir. 2014) (affirming the Rule 12 dismissal of trademark infringement claims because, as a matter of law, there was no plausible basis to believe consumers would be confused).  Here, a side-by-side comparison of the marketing materials included in Group Exhibit A to the Complaint shows they could not plausibly give rise to any consumer confusion.  Most notably, the titles of the two musicals, which are by far the dominant elements of the respective images, are entirely different – Plaintiffs' images include "Rocket Boys" in large characters, whereas the allegedly infringing images prominently feature the title "October Sky."  Am. Compl., Ex. A.  Because the materials attached to the Complaint themselves show that the parties' marks are dissimilar, dismissal under Rule 12(b)(6) is appropriate.  *E.g.*, *Mintz v. Subaru of Am., Inc.*, 2016 WL 5909360, at *2 (N.D. Cal. Oct. 11, 2016), *aff'd*, 716 F. App'x 618 (9th Cir. 2017); *Le Book Publ'g, Inc. v. Black Book Photography, Inc.*, 418 F. Supp. 2d 305, 311-12

---

[11] Because the purported marks describe the contents of the Plaintiffs' play, as a matter of law they cannot be "inherently distinctive."  *E.g.*, *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 420 (7th Cir. 2019) (descriptive marks are not inherently distinctive).

[12] Plaintiffs refer to "advertising efforts and expenditures made to market the business," Am. Compl. ¶ 54; *see also id.* ¶ 57, but say nothing about the amount of funds spent, the geographic scope of the advertising, the duration of any advertising efforts, or even which images were used to promote their play.  *See*, *e.g.*, *Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 598 (E.D.N.Y. 2017) (complaint did not plausibly allege secondary meaning where it referred generically to a "substantial investment" in advertising but was silent on the amounts spent or the specifics of the advertising).

(S.D.N.Y. 2005).[13]

**III.        Counts V and VI Must Be Dismissed for the Same Reasons as the Lanham Act Claims.**

Plaintiffs' claims for unfair competition and common law trademark infringement must be dismissed for the same reasons as their Lanham Act claims:  Plaintiffs have not plausibly alleged that they have any protectable trademark rights or that Defendants' alleged promotional materials create a likelihood of confusion.  The Complaint alleges that the Defendants have violated Plaintiffs' common-law right to prevent others from using their trademarks and that the Defendants have violated the UDTPA by "passing off Plaintiffs' copyrights and Trademarks … as their own," causing a likelihood of confusion as to the source or affiliation of the October Sky Musical, and disparaging the Rocket Boys Musical.  *See* Am. Compl. ¶¶ 127-29, 131.

This is the same alleged conduct underlying the Lanham Act claims.  Am. Compl. ¶¶ 110-12, 118.  Where the basis for a plaintiff's common law trademark infringement and UDTPA claims are the same factual allegations underlying a Lanham Act claim, they are subject to the same legal inquiry and analysis as the Lanham Act claim.  *Desmond v. Chicago Boxed Beef Distribs.*, 921 F. Supp. 2d 872, 884 (N.D. Ill. 2013); *SB Designs v. Reebok Int'l, Ltd.*, 338 F. Supp. 2d 904, 914 (N.D. Ill. 2004)).  These claims therefore must "rise or fall based on the Lanham Act claim."  *MJ & Partners Restaurant Ltd. P'ship v. Zadikoff*, 10 F. Supp. 2d 922, 929 (N.D. Ill. 1998).

---

[13] It is not just implausible, but frankly absurd, to claim that, for an adaptation of a book about boys who build rockets, images of boys silhouetted against the sky and rockets could be uniquely associated with Plaintiffs.  Indeed, Plaintiffs indisputably were *not* the first to promote an adaptation of the Book in that manner.  Instead, they copied Universal Pictures.  Universal used similar imagery to promote its theatrical and home video releases of the 1999 film *October Sky* – which also was based on the Book – *years before* Plaintiffs ever performed their play.  As shown in Exhibit A to the accompanying Declaration of Andrew J. Thomas, the movie posters and home video covers for *October Sky* featured images of rockets soaring skyward and boys silhouetted against the sky.  These images are not subject to reasonable dispute and thus are subject to judicial notice pursuant to Fed. R. Evid. 201(b).  *See Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1048-49 (7th Cir. 2019).

**IV.      Plaintiffs' Tortious Interference Claim Fails for Two Independent Reasons.**

    A.      Plaintiffs Do Not – and Cannot – Allege That These Defendants Had Any
            Knowledge of Any of Plaintiffs' Prospective Business Relationships.

Plaintiffs have failed to plead facts sufficient to establish an essential element of a claim for

interference with prospective business advantage:  that these Defendants *knew* of Plaintiffs' alleged

business expectations.[14]  There is not a single fact alleged in the Complaint to suggest that any of

the named Defendants had any knowledge of Hickam's or Plaintiffs' communications with

potential investors, private showings of the play in New York, or discussions with performance

venues in New York and San Diego.  The Complaint completely fails to allege how any of the

Defendants could have learned of these relationships, whether from Plaintiffs or anyone else.  In

light of this, Plaintiffs' unsubstantiated, conclusory statement that Defendants "had knowledge" of

Plaintiffs' potential investors and other relationships, Am. Compl. ¶ 136, is part of yet another

"formulaic recitation of the elements of a cause of action" entitled to no presumption of truth on a

motion to dismiss.  *Iqbal*, 556 U.S. at 678.  Plaintiffs' failure properly to allege knowledge of the

specific potential business relationships in question is fatal to their tortious interference claim.

    B.      Plaintiffs Do Not – and Cannot – Allege That Defendants Directed Any Conduct at
            Any Third Party That Was in a Business Relationship with Plaintiffs.

Plaintiffs' interference claim also fails because Plaintiffs do not allege that Defendants

intentionally directed their conduct toward a third party that was in a prospective business

relationship with Plaintiffs.  Courts in this District have made clear that, to state a viable

interference claim, a plaintiff must allege that the defendant engaged in conduct "'directed toward a

third party through which defendants purposely cause that third party not to enter into or continue' a

---

[14] In Illinois, an essential element of a claim for tortious interference with prospective business advantage is that the defendant knew of the plaintiff's expectancy and purposefully interfered with it.  *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd.,* 893 N.E.2d 981, 993 (Ill. App. Ct. 2008).

relationship with the plaintiff." *Hackman v. Dickerson Realtors, Inc.*, 557 F. Supp. 2d 938, 949 (N.D. Ill. 2008) (quoting *McIntosh v. Magna Sys., Inc.*, 539 F. Supp. 1185, 1193 (N.D. Ill. 1982)); *accord Zenith Elecs. Corp. v. Exzec, Inc.*, 1997 WL 223067, at *7 (N.D. Ill. Mar. 27, 1997). Here, Plaintiffs do not allege that any of the Defendants made any communications to or took any other action directed toward any of the "potential investors" or performance venues alluded to by Plaintiffs. Instead, they offer the conclusory assertion that Defendants "interfered" with prospective business relationships between Plaintiffs and potential investors, as well as the New World Stages and Old Globe Theatre venues, *see* Am. Compl. ¶¶ 80-83, 134-38, but they fail to support that assertion with any facts to establish that *these Defendants* ever directed any conduct toward any third party in a business relationship with Plaintiffs.[15]

## V.       The Unjust Enrichment and Conspiracy Allegations Fail to State a Claim.

Plaintiffs' unjust enrichment claim must be dismissed because "[u]nder Illinois law, unjust enrichment is not a separate cause of action." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011). It is not a standalone claim, but rather a "condition" to be remedied by a *different* cause of action. *Id.* Plaintiffs also fail to state a claim for conspiracy because they have not alleged specific facts from which the key element of a conspiracy, the existence of an agreement among the Defendants and Universal, could be inferred. In order to state a claim for civil conspiracy, a complaint must "contain more than the conclusion that there was a conspiracy, it must allege specific facts from which the existence of the conspiracy may properly be inferred." *Redelmann v. Claire Sprayway, Inc.*, 874 N.E.2d 230, 242 (Ill. App. Ct. 2007). An agreement "is a necessary and important element of this cause of action." *McClure v.*

---

[15] Plaintiffs also allege, without elaboration, that Defendants interfered with their relationship with Hickam, *see* Am. Compl. ¶ 81, but they do not allege that any Defendant directed any conduct at Hickam either.

*Owens Corning Fiberglas*, 720 N.E.2d 242, 258 (Ill. 1999) (internal quotation marks omitted).

Plaintiffs' conspiracy allegations here rest entirely on conclusory assertions. *See* Am. Compl.

¶¶ 81-83, 144-49. They fail to allege a single specific fact that would support the existence of an

unlawful agreement among the Defendants. Consequently, the conspiracy claim must be dismissed.

*See Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007).

**VI.        The Complaint Fails to State any Claim against the Corporate Entity Defendants.**

Aside from conclusory allegations that lump together all "Defendants" or "Entity

Defendants," the Complaint does not contain a single factual allegation to establish that *any* of the

Entity Defendants had *any* direct involvement in the alleged copying of Plaintiffs' play, alleged use

of Plaintiffs' trademarks, or alleged interference with Plaintiffs' economic advantage. The only

specific *facts* alleged about the moving Entity Defendants are that some of them at various times

owned or managed the venue where Universal's October Sky Musical was performed in 2015, *see*

Am. Compl. ¶ 14 (Marriott Services), ¶ 16 (DTRS Lincolnshire), or (even less pertinently) that they

are the "parent corporation" or the "successor owner" of certain other Entity Defendants, *see id.*

¶ 15 (Marriott International), ¶ 17 (Strategic Hotels).[16]  Accordingly, all of the claims against these

defendants must be dismissed. *Iqbal*, 556 U.S. at 678.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court dismiss Counts I

through IX of the Complaint, and therefore dismiss the action in its entirety.

---

[16] The contributory copyright infringement claim against the Entity Defendants fails for the additional reason that the Complaint does not allege any facts showing that any of these defendants knew about the alleged infringement. *Monotype Imaging, Inc. v. Bitstream, Inc.*, 376 F. Supp. 2d 877, 883 (N.D. Ill. 2005) (knowledge is an essential element of contributory copyright infringement). Likewise, the conspiracy claim against these defendants must be dismissed because the Complaint fails to allege "specific facts warranting an inference that [each] defendant was a member of the [alleged] conspiracy." *Davidson v. Worldwide Asset Purchasing, LLC*, 914 F. Supp. 2d 918, 924 (N.D. Ill. 2012).

Dated: September 11, 2019                Respectfully submitted,


By:   */s/ Andrew H. Bart*
      Andrew H. Bart (admitted *pro hac vice*)
      JENNER & BLOCK LLP
      919 Third Avenue
      New York, NY 10022
      (212) 891-1645
      abart@jenner.com

      Andrew J. Thomas (admitted *pro hac vice*)
      JENNER & BLOCK LLP
      533 W. 5th St., Ste. 3600
      Los Angeles, CA 90071
      (213) 239-5155
      ajthomas@jenner.com

      Ashley M. Schumacher
      JENNER & BLOCK LLP
      353 N. Clark Street
      Chicago, IL 60654-3456
      (312) 222-9350
      aschumacher@jenner.com

      *Attorneys for Defendants Strategic Hotels &*
      *Resorts LLC, DTRS Lincolnshire, LLC,*
      *Marriott International, Inc., Marriott Hotel*
      *Services, Inc., Michael Mahler, Aaron*
      *Thielen, and Terry James*

## CERTIFICATE OF SERVICE

The undersigned, an attorney of record in this case, hereby certifies that on September 11, 2019, a true and correct copy of the foregoing **Defendants' Memorandum in Support of their Motion to Dismiss** was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

Dated: September 11, 2019

Respectfully submitted,

By: */s/ Ashley M. Schumacher*
Ashley M. Schumacher
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
(312) 222-9350
aschumacher@jenner.com

*Attorney for Defendants Strategic Hotels & Resorts LLC, DTRS Lincolnshire, LLC, Marriott International, Inc., Marriott Hotel Services, Inc., Michael Mahler, Aaron Thielen, and Terry James*